PEOPLE, *ex rel.* ALLEGAN PROSECUTING
ATTORNEY, *v.* HARDING.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—WITNESSES.

The Supreme Court, in reviewing a chancery case *de novo* on the record, has a duty of reaching an independent conclusion, aided but not controlled by the conclusions of the trial judge who had the advantage of seeing and hearing the witnesses.

2. NUISANCE—PADLOCK PROCEEDINGS—ABATEMENT—DISORDERLY PERSONS—EVIDENCE.

Evidence presented in padlock proceedings *held*, to show a considerable number of patrons of defendant's place of business were intoxicated on the premises between the hours of 2 and 4 a. m., hence, were disorderly persons in a public place, since his "hotel" was such a place within the meaning of the padlock statute (CL 1948, § 750.167; CLS 1954, §§ 692.251, 692.252).

3. SAME—HOTEL—PUBLIC PLACE.

A "hotel" is a public place within the meaning of the "padlock" act, that is an inclosure or building wherein, by general invitation, members of the public attend for reasons of business, entertainment, instruction, or the like, and are welcome as long as they conform to what is customarily done there (CLS 1954, §§ 692.251, 692.252).

4. SAME—PADLOCK PROCEEDINGS—EVIDENCE OF REPUTATION.

Evidence that defendant's hotel had a bad reputation in the community for lewdness and assignation, including testimony tending to show lewdness in talk on the dance floor, suggesting assignations in the 26 adjacent hotel bedrooms along 1 side of the 1-story structure also containing a 40′ x 120′ dance floor and restaurant area of 75′ x 150′, was admissible in padlock proceedings to abate the nuisance (CLS 1954, §§ 692.251, 692.252, 692.259).

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 815.
[2, 3] 39 Am Jur, Nuisances § 153 *et seq.*
[3] 28 Am Jur, Innkeepers § 52 *et seq.*

5. INTOXICATING LIQUORS—BOTTLE CLUBS—HOTELS—STATUTES.

Hotels are plainly and expressly excepted from the terms of the so-called "bottle-club" act, whereby one, not licensed under the liquor law, is barred from providing a place to which people may resort for the purpose of consuming their own liquor (CLS 1954, § 436.26c).

6. NUISANCE—BOTTLE CLUBS—HOTELS—PADLOCK PROCEEDINGS.

The so-called "bottle-club" act is not involved in padlock proceedings against a hotel owner, as hotels are expressly excepted from the operation of that act, but neither does the "bottle-club" act preclude the operation of the padlock act against a hotel (CLS 1954, §§ 436.26c, 692.251, 692.252, 692.259).

7. SAME—PADLOCK ACT—EVIDENCE—DISORDERLY PERSONS—INTOXICATING LIQUORS.

Evidence, including reputation for lewdness and assignation and presence of numbers of disorderly intoxicated persons, among them the owner, and the sale of liquor to and by minors at defendant's summer resort hotel, held, sufficient to establish the place as a nuisance under the "padlock" statute (CLS 1954, §§ 692.251, 692.252, 692.259).

8. SAME—INVESTMENT—ATTITUDE OF LOCAL AUTHORITIES—EVIDENCE—PADLOCK ACT.

Neither the amount of hotel owner's investment in his building nor the attitude toward the place by village authorities and some of its citizens has any particular probative value bearing on the question whether the building, by its use, is a nuisance under the padlock act (CLS 1954, §§ 692.251, 692.252, 692.259).

9. SAME—DECREE—HOTEL—PERSONAL PROPERTY—FIXTURES.

Decree of Supreme Court ordering hotel closed for 1 year as a nuisance need not provide for removal or sale of personal property, fixtures and contents of the building (CLS 1954, §§ 692.251, 692.252).

Appeal from Allegan; Beers (Henry L.), J., presiding. Submitted June 9, 1955. (Docket No. 35, Calendar (No. 46,467.) Decided October 3, 1955. Rehearing denied December 1, 1955.

Bill by People of the State of Michigan, *ex rel.* Dwight M. Cheever, Prosecuting Attorney for the county of Allegan, against George E. Harding, Jr., and Helen M. Harding, doing business as Harding's

Resort, to abate a nuisance. Bill dismissed. Plaintiff appeals. Reversed, decree ordered entered, and case remanded for enforcement thereof.

*Dwight M. Cheever,* Prosecuting Attorney, for plaintiff.

*Edward J. Ryan,* for defendants.

*Farhat & Burns,* for defendants on application for rehearing.

*Amicus Curiae: James B. Stanley.*

Boyles, J. This is an appeal by the prosecuting attorney of Allegan county on behalf of the State, from a decree entered in the circuit court for said county dismissing his bill of complaint. The prosecuting attorney had started the suit seeking to abate an alleged nuisance owned and operated by the defendants in the village of Douglas in said county. The essential part of the statute on which the prosecuting attorney relied,[*] commonly referred to as the "padlock" law, is as follows:

"Any building, * * * or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes *or other disorderly persons,* or used for the unlawful manufacture, storing, possessing, transporting, sale, keeping for sale, giving away, bartering, furnishing or otherwise disposing of any * * * intoxicating liquors or any mixed liquors or beverages, any part of which is intoxicating, is hereby declared a nuisance and the furniture, fixtures and contents of any such building, * * * or place, and all such intoxicating liquors therein are also declared a nuisance, and all such * * * nuisances shall be enjoined

[*] PA 1925, No 389, as last amended by PA 1951, No 80 (CLS 1954. §§ 692.251, 692.252 [Stat Ann 1953 Cum Supp §§ 18.901, 18.902]).

.and abated as hereinafter provided. Any person, or his servant, agent or employee who shall own, lease, conduct or maintain any building, vehicle or place used for any of the purposes or by any of the persons above set forth or where any of the acts above enumerated are conducted, permitted or carried on, is guilty of a nuisance. * * *

"The prosecuting attorney * * * of the county, may maintain an action in chancery in the name of the State of Michigan, * * * to abate said nuisance and to perpetually enjoin any person, his servant, agent, or employee, who shall own, lease, conduct or maintain such building, * * * from permitting or suffering such building, * * * or place conducted or maintained by him to be used for any of the purposes or by any of the persons set forth in section 1 hereof, or for any of the acts enumerated in said section." (Italics supplied.)

The trial court, after a lengthy hearing, concluded that the evidence did not sufficiently prove a nuisance, and dismissed the bill of complaint. The precise question here for consideration is whether the proofs adduced by the people establish a nuisance, under said statute. This being a chancery case, we review it *de novo,* on the record, recognizing the advantage which a trial court has, in chancery cases, by seeing and hearing the witnesses. However, we have the duty of reaching an independent conclusion, aided but not controlled by the conclusions of the trial judge. *Hawthorne* v. *Dunn,* 210 Mich 176, 179.

The defendants are the owners of a large building in said village, originally built in 1952 for use as a dance hall and bar. The village council voted to approve a liquor license for the place, but the sheriff of said county refused to approve the issuance of a license and filed his objections with the liquor control commission. The license was refused. The

building involved is a large, barn-like, 1-story structure with a dance floor approximately 40x120 feet in size, a restaurant area approximately 75x150 feet, and a row of 26 sleeping rooms built along 1 wall inside. During the summer of 1953, the period of its use referred to in the bill of complaint, the income from the place was derived from room rentals, sale of food, and the sale of ice and soft drinks mostly for mixing as "set-ups" for whiskey. The patrons, variously estimated by witnesses from 200 to 1,500 in number, usually came about 2 a.m. after licensed liquor establishments were closed. The defendants kept the place open until 4 a.m. During that time customers usually brought in and drank intoxicating liquor, danced, bought food, ice and soft drinks.

There was no direct proof that the defendants themselves sold any intoxicating liquor on the premises. However, there was testimony that at least half of the customers were drinking intoxicating liquor, and that minors who were drinking intoxicating liquor in the place were observed by the defendants without objection, some of them being high school or college students. A large number of patrons became publicly intoxicated on the premises. One of the customers, a young man friend of 2 minors who were employed by defendants as waiters, became so intoxicated there that his friends wanted to drive him home. However, he started in his automobile and was killed on the highway by running into a parked truck while driving his automobile, drunk. The defendant George Harding, Jr., was intoxicated in public, in the place, on numerous occasions. On 1 occasion, at least, he furnished liquor to a minor waiter and drank with him. One of the waiters, a minor, at the suggestion of defendant George Harding, Jr., and with his permission, sold whiskey in the place. It was customary for a waiter to negotiate a sale of a pint of whiskey, accept

$5 from a customer in the place, and then either go, or direct the purchaser to go, to a parked car outside in the parking lot where the liquor was kept. There was testimony that whiskey was sold on the premises by waiters, with the knowledge of the defendant George Harding, Jr. When 1 of the waiters asked permission of George Harding, Jr., to purchase whiskey for a customer, Harding told him "Yes, any way to make a buck." The minor then sold a fifth of whiskey to the customer. A number of pints of whiskey were sold on the premises by waiters at $5 a pint.

There was testimony that a considerable number of the patrons of the defendants' place of business were drunk and intoxicated on the premises, between the hours of 2 and 4 a.m.

"Any person  *  *  *  who shall be drunk or intoxicated  *  *  *  in any public place  *  *  *  shall be deemed a disorderly person." CL 1948, § 750.167 (Stat Ann 1953 Cum Supp § 28.364).

Defendants' "hotel," as operated by the defendants, was a public place within the intent of the "padlock" act.

"As applied to an inclosure, room, or building, a 'public place' must be considered as one wherein, by general invitation, members of the public attend for reasons of business, entertainment, instruction, or the like, and are welcome as long as they conform to what is customarily done there.  *  *  *  The term has been applied to a variety of places, as, a public cafe, a public dance hall, a hotel." 70 CJS, Place, pp 1095, 1096.

The place had a bad reputation in the community for lewdness and assignation. There was testimony tending to show lewdness in talk on the dance floor, suggesting assignations in the adjacent rooms. These

rooms had the customary equipment of hotel bedrooms.

"In any action brought under this act, evidence of the general reputation of the building, * * * or place shall be admissible for the purpose of proving the existence of said nuisance. Proof of knowledge of the existence of such nuisance on the part of the defendants or any of them, shall not be required." CLS 1954, § 692.259 (Stat Ann 1953 Cum Supp § 18.909).

The defendants cite CLS 1954, § 436.26c (Stat Ann 1953 Cum Supp § 18.997[3]), added to the liquor control act* by PA 1949, No 295 (the so-called "bottle club" act), and claim that the instant case is an attempt to circumvent that act by decreeing that for a "hotel" to violate that act constitutes a nuisance under the "padlock" act. Conceding that the place of the business of the defendants is a hotel, which is not controverted here, the liquor control act, as amended by PA 1949, No 295 (the "bottle club" act), is not under consideration in the case at bar, for the obvious reason that hotels are plainly excepted from said amendment to the act by its express terms.

We conclude that the evidence adduced by the appellant establishes that the place was a nuisance under the statute. It was used for possessing intoxicating liquor, and for the use of disorderly persons.

The defendants argue that their manner of making use of the building in question, resulting from the unanticipated denial of a liquor license for their "hotel," should be excused by the fact (as they claim) that they have invested a large sum of money in it. This claim, together with the evidence that this building was located in a summer resort village, and that

* PA 1933 (Ex Sess), No 8, as amended (CL 1948 and CLS 1954, § 436.1 et seq. [Stat Ann and Stat Ann 1953 Cum Supp § 18.971 et seq.]).

its use had the approval of the public officers of the village, and of many of its citizens, was frequently referred to by the trial court in coming to a conclusion. But neither the amount of the investment in the building—be it large or small—nor the attitude toward the place by the village authorities and some of its citizens, has any particular probative value, bearing on the question whether the building, by its use, is a nuisance under the padlock act.

A decree may be entered here declaring the building to be a nuisance within the purport of the act and directing that it be effectively abated by closing the building against its use for any purpose for 1 year, and so keeping it closed unless sooner released under said act. The decree need not require the removal or sale of the personal property, fixtures and contents of the building. *People, ex rel. Wayne Prosecuting Attorney,* v. *Sill,* 310 Mich 570. The decree shall provide that the case be remanded for enforcement of the decree.

Reversed and remanded. Costs to appellant.

Carr, C. J., and Butzel, Smith, Sharpe, Reid, Dethmers, and Kelly, JJ., concurred.