CITY OF WESTLAND v JON L OKOPSKI

CITY OF WESTLAND v LAVERN OKOPSKI

Docket Nos. 152429, 152436. Submitted October 5, 1994, at Detroit.
Decided December 19, 1994, at 9:10 A.M. Leave to appeal
sought.

Jon L. Okopski and Lavern Okopski were convicted by a jury
following a joint trial in the 18th District Court, Gail Mc-
Knight, J., of being a disorderly person and assault and battery
of a police officer. Jon Okopski was also convicted of interfering
with police. Each defendant was sentenced to eighty-nine days
in jail for each conviction and was assessed fines and costs.
Both defendants appealed to the Wayne Circuit Court, which
affirmed, Kaye Tertzag, J. Each defendant appealed by leave
granted, and the appeals were consolidated.

The Court of Appeals *held:*

1. The trial court did not err in admitting into evidence for
the purpose of impeaching the defendants' trial testimony the
results of preliminary breath tests administered by the police
shortly after the defendants were arrested. Such results may be
admitted as impeachment evidence. Because those results were
offered as rebuttal, the prosecution had no duty to offer them in
its case in chief.

2. The defendants failed to preserve for appellate review the
question whether the preliminary breath test results met the
strict standards for the admission of scientific evidence.

3. The defendants' failure to request a cautionary instruction
regarding the use of rebuttal evidence and their right to resist
an unlawful arrest and their failure to object to the trial
court's use of the statutory presumption of intoxication, when
coupled with their failure to show any prejudice, resulted in a
waiver of appellate review of these claims of instructions error.

4. Because the Knights of Columbus Hall at which the
wedding reception at which the altercation that led to these

REFERENCES

Am Jur 2d, Evidence §§ 321, 1021; Intoxicating Liquors § 36; Wit-
nesses §§ 958, 977.

Location of offense as "public" within requirement of enactments
against drunkenness. 8 ALR3d 930.

convictions was held can be rented by the general public, and accordingly was a building where members of the public go for entertainment, it was a public place within the meaning of the Westland disorderly conduct ordinance under which the defendants were prosecuted, even though at the time of the altercation it was being used for a private function.

5. The trial court did not abuse its discretion in admitting a tape recording of the 911 telephone call that resulted in the police being dispatched to the wedding reception. Because the recording was admitted to show why the police were sent to the wedding reception rather than to establish the truth of the matters asserted in the telephone call, it did not constitute hearsay. Even if the recording had been admitted to prove the truth of the matters asserted in it, it would have been admissible under the present sense impression exception of MRE 803(1). In any event, error in the admission of the recording, if any, was harmless.

6. The offenses under the Westland Code of interfering with a police officer and assault and battery of a police officer are different crimes with different elements, and conviction of and sentencing for both does not constitute double jeopardy.

7. The comments made by the trial court at the sentencing were appropriate and do not support the claim that resentencing is required.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — INTOXICATION — PRELIMINARY
   BREATH TESTS — IMPEACHMENT.

The results of a preliminary breath test administered shortly after a defendant's arrest may be admitted as impeachment evidence in a trial of a charge of being a disorderly person where the defendant has testified to not being intoxicated.

2. WORDS AND PHRASES — PUBLIC PLACE — SOCIAL HALLS.

A social hall that can be rented by the general public, and thus is a building where the members of the public can go for entertainment, is a public place for the purpose of an ordinance prohibiting intoxication in a public place, even when the hall is being used for a private function that is not open to the general public.

*Law Offices of Angelo A. Plakas, P.C.* (by *C. Brian James*), for the plaintiff.

*Law Offices of Berger & Rabaut* (by *Seymour Berger*), for Jon L. Okopski.

*Burgess & Burgess, P.C.* (by *Laurence C. Burgess*), for Lavern Okopski.

Before: Hood, P.J., and Taylor and D. A. Servitto,* JJ.

Hood, P.J. Defendant Lavern Okopski was convicted by a jury in the 18th District Court of being a disorderly person (Westland Code, § 22.79) and of committing an assault and battery on a police officer (Westland Code, § 22.17). He was sentenced to eighty-nine days for each conviction, to run concurrently, and assessed $700 in fines and costs.

Defendant Jon Lyle Okopski, the son of Lavern, was convicted by the same district court jury of interfering with police (Westland Code, § 22.252), being a disorderly person (Westland Code, § 22.79), and committing an assault and battery on a police officer (Westland Code, § 22.17). He was sentenced to eighty-nine days for each conviction, to run concurrently, and also assessed $600 in fines and costs for each conviction, for a total of $1,800.

Both defendants appealed their convictions to the Wayne Circuit Court, which affirmed, but which stayed the sentences pending appeal to this Court. We granted leave to consider the issues raised by defendants and now affirm.

The events leading to defendants' arrest and conviction arose as the result of what can be described charitably as a gala celebratory event run amok, or can be described less charitably as a miniriot.

On October 6, 1990, the Okopski family and approximately two hundred of their friends and relatives gathered at the Knights of Columbus Hall in Westland to celebrate the wedding of Lavern Okopski, Jr. What began as a joyous occa-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

sion, ended in the arrest of three of the Okopski family: Lavern (the groom's father), Jon (the best man and codefendant here), and Annette Freeman (a bridesmaid and apparently Lavern's daughter and Jon's sister). Additionally, the groom's mother, Judith Okopski, required hospitalization after she slipped on some ice and broke her ankle.

The problem apparently started when the disk jockey hired for the occasion failed to follow orders. Both defendants had warned the disk jockey that he should not play any "black" music, but to play only country and western music. The disk jockey nevertheless played several hit tunes by "rap" performer M. C. Hammer. Lavern Okopski took great exception to this, and an altercation ensued, which escalated to numerous physical confrontations and resulted in twenty-three police officers from three jurisdictions eventually arriving at the scene. At that point, confrontations developed between the celebrants and the police and resulted in the eventual subduing and arrest of defendants.

The police administered preliminary breath tests (PBT) to Lavern and Jon after they were taken to the police station. According to the testimony of one of the officers, Lavern showed a blood alcohol level of 0.15 percent and Jon a level of 0.06 percent. The police had not obtained a search warrant before conducting the tests.

As a result of the incident, Lavern was charged with violation of two city ordinances, one prohibiting assault and battery and the other prohibiting being drunk and disorderly in a public place. Jon was charged with the same offenses, as well as obstructing and hindering a police officer in the performance of his duty. In addition Annette Freeman was charged with assault and battery and with being drunk and disorderly.

A consolidated trial of all three individuals was held on August 2, 5, and 6, 1991. After deliberating a little less than four hours, the jury found Lavern and Jon guilty as charged, but found Annette not guilty with respect to the charges against her.

At a sentencing hearing held on October 24, 1991, the district court expressed its extreme displeasure with the sort of behavior exhibited by defendants at what should have been a joyous celebration of a wedding. The court also noted that defendants refused to admit any wrongdoing and appeared to believe that their actions were quite proper and understandable. After hearing disagreements regarding the contents of a Probation Department report, the court imposed sentence, and these appeals followed.

Both defendants claim that the trial court committed error requiring reversal in admitting the PBT results. We disagree. At trial, both defendants denied that they were intoxicated. Lavern testified that he consumed only a couple of beers, and Jon testified that he had consumed only a champagne glass of beer. The trial court then allowed the prosecutor to admit the PBT test results to impeach defendants.

A blood alcohol test administered pursuant to statutory law is not admissible in a criminal prosecution other than a prosecution for a drinking and driving offense as enumerated in the statute. MCL 257.625a(1); MSA 9.2325(1)(1); *People v Keen,* 396 Mich 573, 575; 242 NW2d 405 (1976); *Manko v Root,* 190 Mich App 702, 704; 476 NW2d 776 (1991). In this case, we are presented with an issue of first impression: whether PBT results are admissible to impeach a defendant in a criminal case.[1]

---

[1] We note that the test administered in this case was a Breatha-

Evidence that is admissible for one purpose is not inadmissible because its use for a different purpose is precluded. *People v VanderVliet,* 444 Mich 52, 73; 508 NW2d 114 (1993). Likewise, otherwise constitutionally inadmissible evidence may be admissible for the purpose of rebutting a defendant's false assertions at trial. *People v Sutton (After Remand),* 436 Mich 575, 592; 464 NW2d 276 (1990), reh den 437 Mich 1208 (1990), citing *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971).

In this case, defendants' testimony about not being intoxicated caused the prosecutor to present rebuttal evidence of defendants' blood alcohol content. The evidence was not used to prove substantively that defendants were intoxicated; rather, the test results were used to impeach defendants' testimony on that point. We find that this procedure was permissible.

Lavern also argues that the prosecutor should have presented the evidence in his case in chief, citing *People v McGillen No 1,* 392 Mich 251, 266; 220 NW2d 677 (1974). In addition to the excerpt quoted by him, however, the *McGillen* Court, adopting the language of *People v Quick,* 58 Mich 321, 323; 25 NW 302 (1885), that is applicable to both defendants, also stated:

> Cases may sometimes arise where testimony which could not be had in the opening may be let in upon good cause shown thereafter. [*Id.* at 266.]

Likewise, our Supreme Court in *People v Losey,* 413 Mich 346, 351, n 3; 320 NW2d 49 (1982), added:

lyzer test rather than a blood or urine test. However, the statutory provision involved is one and the same, and we see no reason that this distinction would alter the result.

> We recognize that there may be occasional cases
> in which evidence that might have been admissible
> in the prosecutor's case in chief could be admitted
> in rebuttal. . . . [E]vidence that would have been
> repetitive on a point thought not to be seriously
> contested might be allowed in rebuttal if the prose-
> cutor is genuinely surprised by the defendant's
> focusing on the point in defense.

When rebuttal evidence is permitted, it must
relate to a substantive matter rather than a collat-
eral one. *McGillen, supra* at 266. Generally, con-
tradictory evidence is admissible only when it
directly tends to disprove a witness' exact testi-
mony. *Id.* at 268.

In this case, the prosecutor presented evidence
in his case in chief that defendants were intoxi-
cated. During the defendants' case, however, defen-
dants denied that they were intoxicated. Lavern
said he consumed only a couple of beers, and Jon
said that he consumed only a few ounces of beer.
Defendants thus opened the door for the prose-
cutor to rebut that evidence. Defendants' intoxica-
tion was a substantive issue—the disorderly person
ordinance requires that a person be intoxicated.
Here, defendants testified that they had some beer,
but they were not intoxicated. The PBT results
directly tended to disprove that exact testimony.
The rationale for the prohibition of test results in
any but the statutorily specified prosecution is
simply inapplicable in a situation such as the
present, where a defendant specifically has denied
intoxication.

Defendants also argue that the PBT did not meet
the strict standards for the admission of scientific
evidence. Defendants did not make this objection
at the trial court level. An appeal based on one
ground is not preserved where the objection at
trial was on a different ground. *People v Stimage,*

202 Mich App 28, 30; 507 NW2d 778 (1993). Additionally, even if we found that the trial court erred in admitting the PBT results without scientific foundation, the error would be harmless because other evidence established that defendants were intoxicated. See, generally, *People v Hempstead,* 144 Mich App 348, 353-354; 375 NW2d 445 (1985).

Finally, defendants argue that the judge should have given a cautionary instruction regarding the rebuttal evidence. Defendants did not request such an instruction. Relief will not be granted where a defendant did not request a limiting instruction at trial and where the likelihood of prejudice resulting from the instruction's absence was not shown. *People v Stanton,* 190 Mich App 558, 562-563; 476 NW2d 477 (1991). We find no prejudice. Even without the PBT results, the evidence supports a finding that defendants were intoxicated.

Moreover, the case that Lavern relies on, *People v Cox,* 61 Mich App 37, 40; 232 NW2d 188 (1975), says that prejudice resulting from an instruction's absence is rare. In this case, the jury requested further instructions regarding intoxication in the context of the disorderly person ordinance. The jury did not express confusion concerning Lavern's PBT result or his intoxication. Accordingly, reliance upon *Cox* is misplaced.

We conclude that the trial court did not err in admitting the PBT results to impeach defendants.

Defendants also claim that the trial court erred in ruling that the Knights of Columbus Hall was a public place within the meaning of that term as used in the Westland ordinance and that the ordinance is unconstitutional. We disagree in both instances.

Defendants were convicted of disorderly conduct under Westland Code, § 22.79(5), which states in part:

A person who is intoxicated *in a public place* and who is either endangering directly the safety of another person or of property or is acting in a manner that causes a public disturbance. . . . [Emphasis added.]

The above language is identical to the Michigan statutory law regarding disorderly conduct, MCL 750.167(1)(e); MSA 28.364(1)(e). Thus, case law regarding the Michigan statute is helpful to us in interpreting the Westland ordinance.

Under general principles of constitutional law, statutory language must be sufficiently clear and definite to provide fair warning of prohibited conduct. *Blue Cross & Blue Shield of Michigan v Governor,* 422 Mich 1, 92-93; 367 NW2d 1 (1985). A statute is void for vagueness where people of common intelligence must guess at the statute's meaning and differ with regard to how it applies. *Allison v Southfield,* 172 Mich App 592, 595-596; 432 NW2d 369 (1988).

Defendants state that the Michigan disorderly conduct statute was found unconstitutional in *People v Gagnon,* 129 Mich App 678; 341 NW2d 867 (1983). Defendants are only partially correct, because the Court found only a portion of the statute void for vagueness under the facts of that case. In *Gagnon,* the defendant was a passenger in a car stopped by a police officer because of a suspicion of drunk driving. The defendant refused to follow the officer's instructions and then argued and fought with the officer. *Id.* at 681-682. The Court found that the "public disturbance" language of the statute was unconstitutionally vague given the facts. *Id.* at 683-684. However, the Court did not hold that the entire statute was unconstitutional. Instead, it interpreted the public disturbances provision to require an endangering of the safety of a

person or property. *Id.* at 684. Therefore, *Gagnon* does not apply to the issue presently before this Court, because it did not address the "public place" provision, nor did it find the statute unconstitutional.

The Michigan statute and the Westland ordinance do not define the term "public place." The Michigan Supreme Court considered the definition of a public place in *People, ex rel Allegan Prosecuting Attorney v Harding,* 343 Mich 41; 72 NW2d 33 (1955). The establishment at issue in *Harding* was a dance hall with an adjacent restaurant and sleeping rooms. Patrons, estimated to be between two hundred and fifteen hundred nightly, frequented the hall after 2:00 A.M., when the bars closed. *Id.* at 44-45. The Court found that the hall was a public place within the meaning of the statute. The Court relied on the following definition of a public place:

> "As applied to an inclosure, room, or building, a 'public place' must be considered as one wherein, by general invitation, members of the public attend for reasons of business, entertainment, instruction, or the like, and are welcome as long as they conform to what is customarily done there. . . . The term has been applied to a variety of places, as, a public cafe, a public dance hall, a hotel." [*Id.* at 46, quoting 70 CJS, Place, pp 1095, 1096.]

The Knights of Columbus Hall in this case meets the above definition. The hall was available for rental by the general public and, accordingly, is a building where members of the public go for entertainment. Defendants argue that the wedding reception was not open to the general public and that this changes the character of the hall so that it was not a public place. Defendants seek to tailor

the definition of a public place to suit their purposes. The above definition of public place is broader than defendants would allow—it does not require a particular function on a particular occasion. The question here is not whether the Okopski wedding reception was a public place, but whether the Knights of Columbus Hall was a public place. The answer, under the above definition, is yes.

Both defendants cite *Jads, Inc v Detroit,* 41 Mich App 693; 200 NW2d 715 (1972), as supporting their contention that the reception was not a public place. In *Jads,* a topless dancer was convicted of indecent exposure under a city ordinance that prohibited such behavior in "the streets, lanes, alleys, markets or public places of the city." *Id.* at 695. The Court found that the Sip' n Chat Bar, where the defendant danced, was not a public place within the ordinance. The Court stated:

> Without in any way attempting to define the exact limits of the term "public places" we simply conclude that a cabaret does not fit within the class of specific examples in this ordinance: streets, lanes, alleys and markets. [*Id.* at 697.]

It is not proper to analogize *Jads* and the instant case. First, that case was decided under a different statute. Second, the Court itself stated that it would not define the term "public place." Third, the *Jads* statute enumerated specific locations—streets, lanes, alleys, and market—followed by the general phrase "public places." The Court thus was obliged to interpret the statute under the doctrine *ejusdem generis,* which calls for courts to interpret a general term following specific terms to be of the same kind. *Id.* at 696. In this case, the statute is broad—it includes all public places without specifying any particular kind of place. *Jads* is

distinguishable from this case for those enumerated reasons.

Moreover, we believe the Westland ordinance was designed to prevent just the type of conduct exhibited at the Okopski reception. Lavern attacked the disk jockey, acting so irrationally that wedding guests streamed out of the hall into the parking lot. Defendants were verbally abusive to the police and tried to hit them, forcing them to call for backup units. The circumstances could have easily escalated into a true riot. The reception was not a small party at a private home. Here, some two hundred people were gathered at a hall, drinking and dancing. The hall fits within the definition of a public place, and the trial court was correct in so holding.

We find no merit in any of defendants' other claims of error and address them only briefly.

The trial court did not abuse its discretion in admitting the tape recording of the 911 telephone call that resulted in the police responding to the disturbance at the hall. First, the 911 tape recording was not hearsay, because it was not introduced to prove the truth of the matter asserted therein, but rather to show why the police responded. MRE 801(c); *People v Jackson,* 113 Mich App 620; 318 NW2d 495 (1982). Second, even if the tape recording were offered to prove the truth of the statements therein, it would fall within the present sense impression exception of MRE 803(1). *People v Cross,* 202 Mich App 138, 142; 508 NW2d 144 (1993). Finally, even if there were error in the admission of the 911 tape recording, such error would be harmless beyond any doubt, because the same facts were shown by other, competent evidence. The prosecutor presented the tape recording at the close of his case, after witnesses already had established the facts at issue. The disk jockey

had testified that he had been attacked. The bartenders already had testified that a large number of people had been fighting and that Judith Okopski had been injured. See *People v Slaton,* 135 Mich App 328, 338; 354 NW2d 326 (1984).

The trial court did not commit error requiring reversal in failing to instruct sua sponte the jury concerning the defendants' right to resist an unlawful arrest. Defendants' did not raise any objection at trial to the failure to give such an instruction, and the issue is waived absent manifest injustice. *People v Vaughn,* 200 Mich App 32, 39-40; 504 NW2d 2 (1993). We find no manifest injustice, because our review of the record convinces us that the facts do not support defendants' theory that the arrests were unlawful. *People v Dembinski,* 62 Mich App 583, 589; 233 NW2d 662 (1975).

We also must reject Lavern's claims that the trial court abused its discretion in admitting the statutory presumption of intoxication. We first note that Lavern failed to preserve this issue because he did not object at trial. *People v Considine,* 196 Mich App 160, 162; 492 NW2d 465 (1992). We also would note that the presumption was admitted for the limited purpose of impeaching defendant's testimony that he had had only a couple of beers. Therefore, use of the presumption was permissible.

Jon was not, as he claims, placed in double jeopardy or sentenced improperly as the result of being charged and convicted both of assault and battery and of interfering with a police officer. The crimes involved are different crimes with different elements. See *People v Gleisner,* 115 Mich App 196, 200; 320 NW2d 340 (1982).

Finally, we find no error in the trial court's sentencing of either defendant. The trial court

articulated several factors in its decisions regarding defendants' sentences, indicating that the jury's verdict was "absolutely appropriate" on the basis of evidence, that defendants' conduct not only violated the law but also brought "great shame on the family," and that defendants expressed no regret or remorse. The trial court also expressed its belief that some testimony was perjurious and an affront to the oaths taken. Our review of the record supports the sentences imposed by the trial court. Because we find no sentencing error, defendants' requests that they be resentenced by a different judge are moot.

Defendants' convictions and sentences are affirmed.