*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ALBIRAIHY/AL-BIRAIHY, Minors.

UNPUBLISHED
April 16, 2026
2:40 PM

Nos. 377016; 377826
Wayne Circuit Court
Family Division
LC Nos. 2025-000132-NA;
2025-000133-NA

Before: GADOLA, C.J., and MURRAY and M. J. KELLY, JJ.

PER CURIAM.

This consolidated appeal arises from two separate child protective proceedings brought by petitioner, Department of Health and Human Services (DHHS), against respondent-father. In Docket No. 377016, respondent-father appeals by right the order assuming jurisdiction over his minor child, RWA1; and in Docket No. 377826, respondent-father appeals by right the order assuming jurisdiction over his minor children, RWA2 and HWA (collectively, the younger children). Respondent-father also challenges the orders removing the children from his care and custody. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent-father is the legal father of RWA1. RWA1's mother passed away in 2018. Respondent-father eventually married respondent-mother, who began to care for RWA1. Respondents had RWA2 and HWA together. In October 2024, respondents had an argument, and respondent-mother took the younger children and moved out of the home to live with her mother. After respondent-mother moved out, RWA1 disclosed to respondent-father that respondent-mother subjected her to sexual abuse by allowing two unidentified men into their home to sexually assault RWA1 while respondent-father was at work. Respondent-father took RWA1 to the police station to report the sexual assaults.

Petitioner investigated the allegations of sexual abuse against RWA1. Children's Protective Services (CPS) employees Loria Henry and Laneisha Lewis conducted the investigation. According to Henry and Lewis, during the investigation respondent-mother denied

sexually exploiting RWA1, and claimed that she was subjected to years of domestic violence from respondent-father, which caused her to leave the home. She also indicated that respondent-father's mental health was unstable. Shortly after the investigation started, respondent-mother obtained a personal protection order (PPO) against respondent-father.

In February 2025, petitioner initiated child protective proceedings against respondent-father through two separate petitions. The first petition sought to remove RWA1 from respondent-father's care and requested the trial court to assume jurisdiction over RWA1. The second petition sought to remove the younger children from both respondents and also requested the trial court assume jurisdiction. Following a preliminary hearing, the trial court authorized the petitions, removed the children from respondent-father, and placed them under petitioner's care and supervision. It also removed the younger children from respondent-mother's custody but allowed respondent-mother to continue residing in the home with her mother, where the younger children were placed.

The trial court subsequently held a bench trial for the adjudication. It heard testimony from respondents and Henry. Notably, respondents denied the presence of any domestic violence in their relationship and testified that they had a good marriage. Respondent-mother indicated that she moved to terminate her PPO against respondent-father and denied reporting any concerns regarding domestic violence or respondent-father's mental health to CPS during the investigation. However, Henry maintained that respondent-mother reported concerns regarding domestic violence and respondent-father's mental health during the course of the investigation. The trial court found that respondents' testimony was not credible and determined that there were statutory grounds to assume jurisdiction over the children. This appeal ensued.

II. REMOVAL

Respondent-father argues that the trial court erred by removing the children without making sufficient findings to support removal under MCL 712A.13a(9) and MCR 3.965(C)(2), and that the trial court's findings were otherwise unsupported by the record.

A. PRESERVATION AND STANDARD OF REVIEW

Generally, for an issue to be preserved, it must be raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Respondent-father argued at the preliminary hearing that removal was not appropriate because there were no ongoing domestic violence concerns and RWA1 recanted her allegations of sexual abuse. Therefore, those arguments are preserved on appeal. However, respondent-father did not explicitly challenge the trial court's articulation of its findings under MCL 712A.13a(9) and MCR 3.965(C)(2), and the parties agree that the issue is unpreserved and that a plain-error standard of review is appropriate.

Generally, we review the interpretation and application of statutes and court rules de novo. *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020). A trial court's factual determinations are reviewed for clear error, which "requires that the reviewing court be left with a firm and definite conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). Even if the trial court erred, "this Court will not disturb the trial court's order unless it

-2-

would be inconsistent with substantial justice to permit the order to stand." *Id*. (quotation marks and citations omitted).

We review unpreserved issues in appeals from child protective proceedings for plain error. *In re Doe*, 350 Mich App 1, 10; 29 NW3d 499 (2024). To prevail under the plain-error standard, respondent-father "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [his] substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). Additionally, the error must have "seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks, citations, and brackets omitted).

## B. ANALYSIS

As a preliminary matter, petitioner contends that this issue is waived because under MCR 7.204(A)(1)(a), respondent-father failed to timely appeal the removal order within 21 days of its entry. Notably, MCR 3.993(A)(1) provides that a respondent may appeal by right "any order removing a child from a parent's care and custody . . . ." MCR 3.993(C)(1) notes that "[e]xcept as modified by this rule, chapter 7 of the Michigan Court Rules governs appeals from the family division of the circuit court." In a civil case, an appeal by right must be taken within 21 days from entry of the order appealed from. MCR 7.204(A)(1)(a).

The trial court entered orders removing the children from respondent-father on March 13, 2025, and respondent-father did not file an appeal by right within 21 days. Instead, he filed the instant appeal by right from the trial court's June 27, 2025 orders of adjudication and simultaneously challenged the trial court's underlying removal orders. Because respondent-father failed to appeal the trial court's removal orders within 21 days of their entry, his challenge to those orders is not timely.

However, respondent-father's failure to timely appeal the removal orders does not constitute a waiver of the issue. In *Ferranti*, 504 Mich at 35, the Court noted that it is permissible for a respondent to challenge an adjudication error when appealing from an order terminating parental rights and that "[t]he collateral-bar rule does not apply within one child protective case, barring some issues from review." In coming to this conclusion, the *Ferranti* Court reasoned that "[a] child protective proceeding is a single continuous proceeding that begins with a petition, proceeds to an adjudication, and—unless the family has been reunified—ends with a determination of whether a respondent's parental rights will be terminated." *Id*. at 23 (quotation marks and citations omitted; alteration in original). It further recognized that while "a party's failure to timely assert a right in the trial court generally means that any resulting error will be treated as 'unpreserved' if challenged on appeal . . . issue preservation dictates the appellate standard of review; it does not transform direct review into collateral attack." *Id*. at 25.

While *Ferranti* was decided in the context of challenging an adjudication decision through appeal of a termination order and did not address whether a respondent may challenge a removal decision through appeal of an adjudication order, given that removal of the children was part of a single, continuous child protective proceeding, it follows that respondent-father may challenge the trial court's removal decision through his appeal of the orders of adjudication. To the extent that respondent-father's challenge is not timely, it impacts the standard of review, rather than our

ability to review the issue. See *id*. at 25. As noted above, the parties agree that the plain-error standard is appropriate for addressing respondent-father's removal challenge, and we likewise conclude that it is the appropriate standard.

Moving on to respondent-father's substantive argument, MCL 712A.13a(9) and MCR 3.965(C)(2) discuss the factual findings a trial court is required to make before ordering the removal of a child. See *Williams*, 333 Mich App at 185. Notably, MCL 712A.13a(9) and MCR 3.965(C)(2) are "identical in substance." *In re Benavides*, 334 Mich App 162, 168 n 2; 964 NW2d 108 (2020). MCL 712A.13a(9) provides:

> (9) The court may order placement of the child in foster care if the court finds all of the following conditions:
>
> (a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.
>
> (b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).
>
> (c) Continuing the child's residence in the home is contrary to the child's welfare.
>
> (d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.
>
> (e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

Because the trial court was not terminating the rights of respondent-father when deciding whether to remove the children, it had to find that the above factors were satisfied by a preponderance of the evidence. *Williams*, 333 Mich App at 183.

A trial court need not "articulate extensive findings regarding every conceivable detail," but "when a statute or court rule requires factual findings as to an enumerated list of factors, the trial court must make a record of its findings as to each and every factor sufficient for this Court to conduct a meaningful review." *Id*. If a trial court orders the removal of a child, "it must make explicit findings that 'it is contrary to the welfare of the child to remain at home,' MCR 3.965(C)(3), and 'reasonable efforts to prevent the removal of the child have been made or that reasonable efforts to prevent removal are not required,' MCR 3.965(C)(4)." *Benavides*, 334 Mich App at 168.

Respondent-father contends that the trial court failed to make the required factual findings under MCL 712A.13a(9)(a) through (c) as to all of the children and failed to make the requisite findings under MCL 712A.13a(9)(e) as to RWA1. We will address each argument in turn.

MCL 712A.13a(9)(a) requires a finding that "[c]ustody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being." The trial court

explicitly stated on the record that the children were "at an ongoing and substantial risk of harm" in respondent-father's care "based on the domestic violence and the disclosures by [RWA1] and the party's actions after, specifically that [respondent-father] left the two young boys who are very young in the care of [respondent-mother] knowing that [RWA1] reported [respondent-mother] allowed two strange men to sexually assault [RWA1]." This finding was reflected in the trial court's removal orders, which indicated that custody of the children with respondent-father "present[ed] a substantial risk of harm to the child(ren)'s life, physical health, or mental well-being."

Respondent-father argues that these findings were not supported by the record. Regarding the young children, respondent-father challenges the trial court's reliance on his decision to leave them with respondent-mother following RWA1's sexual abuse allegations, noting that the trial court ultimately allowed respondent-mother to continue residing in the home where the young children were placed. He also challenges the risk of harm any domestic violence posed to RWA1, because respondents lived separately and had a PPO in effect.

We conclude that the trial court did not clearly err by finding that the children would be at a substantial risk of harm if they remained in respondent-father's custody. First, the concerns of domestic violence apply equally to all of the children, not just RWA1. Nor did the trial court limit its consideration of domestic violence to RWA1. The record indicates that respondent-father was the perpetrator of domestic violence. While Lewis indicated that the children "were not in the middle of the domestic violence," she also testified that the domestic violence occurred regularly, that the children were present for the incidents, and that they could hear fighting and observe the home in disarray following the episodes. Despite respondents' separation and respondent-mother obtaining a PPO, Lewis expressed concern that respondent-mother was not following through with its enforcement. Lewis's testimony supports the trial court's finding that the children would be at a substantial risk of harm in respondent-father's care.

While the trial court ultimately determined that respondent-mother could remain in the home with the younger children, that does not necessarily preclude its finding that respondent-father placed the younger children at a substantial risk of harm by allowing them to reside with respondent-mother following RWA1's sexual abuse allegations. RWA1 disclosed the sexual abuse to respondent-father in October 2024, prompting him to take RWA1 to the police station to make a report on November 6, 2024. Despite the seriousness of the allegations, respondent-father continued to allow the younger children to reside with respondent-mother. On the other hand, the trial court specifically noted that its decision to allow respondent-mother to reside with the younger children was premised "on the Department's recommendation." Petitioner formed its recommendations following an investigation of the case, which included interviews with respondents, a forensic interview with RWA1, collateral contacts with the police department, a review of police reports, and a team-decision meeting (TDM). The fact that the trial court relied on petitioner's placement recommendation following an investigation does not preclude the finding that the younger children would be at a substantial risk of harm in the custody of respondent-father, given the seriousness of the allegations and his failure to intervene.

Under MCL 712A.13a(9)(b), the trial court was required to find that "[n]o provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a)." As the trial court noted, placement

with respondent-father exposed the children to a substantial risk of harm because of domestic violence, and despite the PPO, respondents continued to have contact. In its removal orders, the trial court found that "[n]o provision of service or other arrangement except removal of the child(ren) [was] reasonably available to adequately safeguard the child(ren) from the risk of harm to the child(ren)'s life, physical health, or mental well-being." This finding was supported by a preponderance of the evidence. Lewis testified that RWA1 was placed with her paternal aunt and the younger children were placed with their maternal grandmother pursuant to safety plans, which petitioner intended to continue. Given the concerns about respondent-father's domestic violence, and the unreliability of the PPO, the trial court did not clearly err by finding that no other arrangement except removal from respondent-father was reasonably available to safeguard the children from harm.

MCL 712A.13a(9)(c) requires a finding that "[c]ontinuing the child's residence in the home is contrary to the child's welfare." The trial court made "specific findings regarding contrary to the welfare" on the record, including RWA1's "serious sexual abuse allegation," respondent-father's decision to leave the "two young boys who are very young in the care of [respondent-]mother knowing that his daughter reported she allowed two strange men to sexually assault her," and the presence of domestic violence. This finding was reflected in the trial court's removal orders, where it noted that it was contrary to the welfare of RWA1 to remain with respondent-father because respondents had "a history of domestic violence," RWA1 and RWA2 disclosed that the domestic violence occurred regularly, and even after RWA1 disclosed sexual abuse by respondent-mother, respondent-father "continued to allow his two small sons" to remain with respondent-mother. Respondent-father argues that these findings were unsupported by the record for the same reasons he asserted when contesting the trial court's finding under MCL 712A.13a(9)(a). For the same reasons detailed above, we conclude that the record supported the trial court's finding by a preponderance of the evidence.

Finally, as to RWA1, MCL 712A.13a(9)(e) requires a finding that "[c]onditions of child custody away from the parent are adequate to safeguard the child's health and welfare." In its removal order, the trial court found that "[c]onditions of custody at the placement away from the home and with the individual with whom the child(ren) is/are placed are adequate to safeguard the child(ren)'s health and welfare." This finding was supported by the record. Lewis testified that RWA1 was placed with her paternal aunt pursuant to a safety plan, and that it intended to maintain that placement. The fact that petitioner intended to continue the placement provides a strong indication that the conditions of child custody were adequate to safeguard RWA1's health and welfare. Further, though not provided through sworn testimony, Lewis previously indicated to the trial court that RWA1 was placed with her paternal aunt, and that the placement was safe. The trial court did not clearly err by finding that the conditions of RWA1's placement away from respondent-father were adequate.

While the trial court did not explicitly note each factor in MCL 712A.13a(9) and MCR 3.965(C)(2) during the preliminary hearing, the findings stated on the record and detailed in the removal orders were "sufficient for this Court to conduct a meaningful review." *Williams*, 333 Mich App at 183. To the extent the trial court erred by noting the applicable factors on the removal order without specifically enumerating each factor on the record, it is not grounds to disturb the trial court's order. See *id*. at 178 ("[T]his Court will not disturb the trial court's order unless it would be inconsistent with substantial justice to permit the order to stand.") (quotation marks and

citations omitted).  As discussed above, the trial court did not clearly err when making its factual findings, which were supported by a preponderance of the evidence.  Given that the factors in MCL 712A.13a(9) and MCR 3.965(C)(2) were supported by the record, on plain-error review, respondent-father cannot demonstrate that any error arising from the trial court's articulation of its findings affected his substantial rights.  See *Ferranti*, 504 Mich at 29.

## III.  ADJUDICATION

Respondent-father argues that the trial court erred by finding statutory grounds to assume jurisdiction over the children because it improperly considered respondent-mother's abusive conduct in its decision and relied on inadmissible hearsay testimony regarding the existence of domestic violence.

## A.  PRESERVATION AND STANDARD OF REVIEW

Respondent-father argued in the trial court that jurisdiction over the children was not established by a preponderance of the evidence.  Therefore, that issue is preserved on appeal. *Glasker-Davis*, 333 Mich App at 227.  However, respondent-father did not object to Henry's testimony on hearsay grounds during the adjudication trial, therefore, his hearsay arguments are unpreserved.

"Challenges to the court's decision to exercise jurisdiction are reviewed for clear error in light of the court's finding of fact."  *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citation omitted).  "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses."  *Id*. (quotation marks and citation omitted).  We review a trial court's decision regarding the admission of evidence for an abuse of discretion.  *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008).  "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).  As noted above, respondent-father's hearsay arguments are unpreserved, so they are subject to a plain-error standard of review.  *Ferranti*, 504 Mich at 29.

## B.  ANALYSIS

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase."  *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).  "The question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights."  *Ferranti*, 504 Mich at 15.  MCL 712A.2(b) permits a trial court to take jurisdiction over a child:

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship.

* * *

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b)(1) and (2).]

"If a trial is held, the respondent is entitled to a jury, the rules of evidence generally apply, and the petitioner has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *Sanders*, 495 Mich at 405 (citations omitted).

Respondent-father first maintains that the trial court erred by finding the statutory grounds for jurisdiction were met under MCL 712A.2(b)(1) and (2) because it failed to separately adjudicate respondents and improperly relied on respondent-mother's sexual abuse to justify adjudication as to him. In support of his argument, respondent-father relies on *Sanders*, 495 Mich 394, for the proposition that the trial court was required to separately adjudicate respondents. There, the Court held that the one-parent doctrine, which allowed trial courts to enter dispositional orders affecting the parental rights of both parents if jurisdiction was previously established over one parent, violated the Due Process Clause of the Fourteenth Amendment. *Id*. at 407, 422. The Court was primarily concerned with the rights of *unadjudicated* parents, who did not undergo a determination of fitness before being subject to dispositional orders. *Id*. at 419. Critically, respondent-father was not an unadjudicated parent with respect to the child protective proceedings. "When the state is concerned that *neither* parent should be entrusted with the care and custody of their children, the state has the authority—and the responsibility—to protect the children's safety and well-being by seeking an adjudication against *both* parents." *Id*. at 421-422. That is exactly what the trial court did here by holding an adjudication trial to determine the fitness of both respondents. The trial court's actions did not run afoul of *Sanders*.

With regard to other evidence, respondent-father argues that the evidence of domestic violence provided by Henry was inadmissible hearsay because it was based on out-of-court statements made by respondent-mother and unadmitted documents. Hearsay is a statement that "the declarant does not make while testifying at the current trial or hearing," MRE 801(c)(1), which "a party offers in evidence to prove the truth of the matter asserted in the statement," MRE 801(c)(2). Hearsay is inadmissible, unless otherwise provided by the rules of evidence. MRE 802.

Henry testified at length about statements that respondent-mother made during CPS interviews. The statements indicated that respondent-mother left the marital home because of domestic violence in the presence of the children, and that the domestic violence involved physical fights, verbal assaults, and financial intimidation. Further, respondent-mother filed a PPO and mental health petition against respondent-father. Respondent-mother stated that respondent-father had mood swings and was potentially taking substances that made their home life stressful, and that he displayed concerning behavior in the neighborhood and in the presence of the children. She also told Henry that respondent-father threatened her before and during the TDM.

Under MRE 803(3), "[a] statement of the declarant's then-existing state of mind or emotional, sensory, or physical condition" is admissible as an exception to the rule against hearsay.

The exception does not include "a statement of memory or belief to prove the fact remembered or believed . . . ." *Id*. See *People v Moorer*, 262 Mich App 64, 73; 683 NW2d 736 (2004) (noting that statements relating to past events do not fall within the parameters of MRE 803(3)). "Statements that the declarant is afraid may be admissible pursuant to MRE 803(3) to prove the declarant's state of mind." *Utrera*, 281 Mich App at 18-19. The above statements made by respondent-mother to Henry were admissible for the purpose of proving respondent-mother's state of mind, namely, her fear of respondent-father based on domestic violence, threats, and his mental health. These statements were also admissible to demonstrate respondent-mother's motive for leaving the home and filing a PPO and mental health petition against respondent-father.

While some of respondent-mother's statements included "assertions other than state of mind, such as events leading to [her] state of mind," the trial court was permitted to consider the statements as they related to proof of respondent-mother's state of mind and not evidence of other issues. *Moorer*, 262 Mich App at 69. It is clear from the trial court's statements that it was concerned with respondent-mother's state of mind and her fear of respondent-father, and it specifically noted the impact of respondent-mother's fear on the credibility of her testimony. Therefore, the trial court did not err by considering statements regarding respondent-mother's state of mind and fear of respondent-father when making its adjudication decision with respect to respondent-father.

To the extent that the trial court considered other testimony based on respondent-mother's out-of-court statements, such as respondent-father's specific actions and conduct, the trial court was permitted to substantively consider Henry's testimony regarding respondent-mother's statements as an opposing-party statement offered against respondent-mother under MRE 801(d)(2). We agree with respondent-father's contention that the trial court could not rely on these statements as evidence against respondent-father. However, the trial court was permitted to draw general credibility determinations about both respondents based on respondent-mother's inconsistent statements, which could ultimately inform its adjudication decision. See *Westland v Okopski*, 208 Mich App 66, 71; 527 NW2d 780 (1994) ("Evidence that is admissible for one purpose is not inadmissible because its use for a different purpose is precluded.").

On plain-error review, respondent-father cannot demonstrate that his rights were substantially affected by any evidentiary error. The trial court assumed jurisdiction over the children pursuant to MCL 712A.2(b)(1) and (2). Under MCR 712A.2(b)(1), the trial court found that the children were "at risk at the home of" respondents and "without proper care and custody." Under MCL 712A.2(b)(2), it found that respondent-father's home was unfit "by reason of neglect, cruelty, drunkenness, criminality, or depravity . . . ."

Even excluding Henry's testimony based on respondent-mother's statements, the trial court's finding of jurisdiction was supported by a preponderance of the evidence. Respondents both testified that they had verbal arguments. Specifically, respondent-mother testified that she left the marital home because she had an argument with respondent-father, and thereafter sought a PPO, which was granted. Respondent-mother admitted that CPS employees did not tell her what information to provide in the PPO. Henry testified that respondent-mother presented the PPO paperwork to CPS, as well as documentation of a mental health petition she filed against respondent-father. Henry testified that respondent-mother was fearful of respondent-father, and observed that at the TDM with respondents, she "saw a level of intimidation in that room with

[respondent-mother]," in regard to respondent-father's behavior. During the TDM, CPS had to intervene because respondent-father would text respondent-mother and speak to her in respondents' native language. Henry also noted that respondent-father generally deflected when questioned about allegations of domestic violence.

The testimony establishes by a preponderance of the evidence that the children would be "subject to a substantial risk of harm" and "without proper custody" in the care of respondent-father under MCL 712A.2(b)(1), and that respondent-father's home environment was "an unfit place for the [children] to live in" under MCL 712A.2(b)(2). Respondent-mother left the home with the younger children following an argument with respondent-father and thereafter sought a PPO that was granted. Respondent-father exhibited intimidating behavior toward respondent-mother, even in the presence of CPS workers, and would generally deflect any allegations of domestic violence. The trial court noted that respondent-mother's decisions to leave the home and pursue a PPO and mental health petition against respondent-father were strongly indicative that "she felt she was in danger and her children were in danger." Further, respondent-father was manipulating respondent-mother with his actions at the TDM. The trial court focused on the actions of respondents, particularly respondent-mother, to conclude that "[h]er actions are the actions of a woman that's fearful because of things that are happening in her home . . . ." It is clear from the trial court's reasoning and orders that it attentively considered the credibility of the parties, and we must "giv[e] due regard to the trial court's special opportunity to observe the witnesses." *Kellogg*, 331 Mich App at 253 (quotation marks and citation omitted).

Specifically, under MCL 712A.2(b)(2), the undisputed evidence established that on October 28, 2024, RWA1 disclosed to respondent-father that respondent-mother allowed her to be sexually abused by unidentified men. Despite believing that RWA1's allegations were true, respondent-father did not take RWA1 to the police station to make a report until November 6, 2024. This establishes that the home was an unfit environment for RWA1, as well as the younger children, based on the doctrine of anticipatory neglect. See *Kellogg*, 331 Mich App at 259 (noting that the doctrine of anticipatory neglect may apply to confer jurisdiction in cases with multiple children). Based on the legally admissible evidence presented, the trial court did not clearly err by assuming jurisdiction over the children.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Michael J. Kelly