2014 CO 49

**Peter Gregory CAIN, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 12SC299**

Supreme Court of Colorado.

Signed June 16, 2014

As Modified July 2, 2014

Douglas K. Wilson, Public Defender Ari Krichiver, Deputy Public Defender Brighton, Colorado, Attorneys for Petitioner.

Dave Young, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Respondent.

Nancy C. Johnson, Attorney–at–Law, Nancy C. Johnson, Lakewood, Colorado, The Law Firm of Abraham Hutt, PC, Abraham V. Hutt, Denver, Colorado, Attorney for Amicus Curiae The Colorado Criminal Defense Bar.

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶ 1 In this appeal, we consider whether the results of a preliminary breath test ("PBT")

for blood alcohol content are admissible for impeachment purposes. While it is clear that when the defendant is charged with driving either while under the influence of alcohol ("DUI") or while ability impaired by alcohol ("DWAI"), the results of the PBT may not be used as evidence of guilt at trial, § 42–4–1301(6)(i)(III), C.R.S. (2013), whether the results of the PBT may nevertheless be used for impeachment purposes is an issue of first impression for this Court.

¶ 2 In this case, the county court determined that although evidence that a PBT registered a positive result for the presence of alcohol is inadmissible to prove intoxication, that evidence could nevertheless be admitted for impeachment purposes if the defendant testified that he had not been drinking. The district court affirmed this decision. We determine that the ruling is erroneous. While a police officer is authorized to conduct a PBT as part of the officer's investigation, we hold that based on the plain language of section 42–4–1301(6)(i)(III), the PBT results may not be used in any court action except as specifically provided in the statute itself. Thus, because the statute does not allow for using PBT results as impeachment evidence, we reverse the order of the district court and remand the case to that court with instructions to return the case to the county court for proceedings consistent with this opinion.

## I. Facts and Procedural History

¶ 3 Officer Morris stopped Petitioner, Peter Cain, for failing to use his turn signal and not fully stopping at a stop sign while driving his truck. When Officer Morris pulled Cain over, he detected an odor of alcohol and noticed that Cain's speech was slurred and his eyes were bloodshot and watery. Officer Morris also found an unopened case of beer in the bed of the truck. Cain told Officer Morris that he was coming from a liquor store and that he had not been drinking earlier in the evening. At this point, Officer

Morris called Officer Verver to the scene to assist him.

¶ 4 Cain declined to perform a voluntary roadside sobriety test but did submit to a PBT at Officer Verver's request. The PBT returned a positive result of 0.075 g/210L, thereby indicating the presence of alcohol. Based on the positive PBT result and his other observations, Officer Morris determined that he had probable cause to believe that Cain was operating his motor vehicle while intoxicated. As such, Officer Morris arrested Cain for DUI. After his arrest, Cain refused to take a breath or blood test to determine his blood alcohol content.

¶ 5 The People subsequently charged Cain with DUI, failure to signal, and failure to stop at a stop sign. Cain pled not guilty. Cain intended to testify at trial that he had not been drinking and that Officer Morris smelled alcohol because the first case of beer that he had picked up at the liquor store was leaking and spilled on his shirt. Cain also planned to testify so that the jury would see that his eyes are usually watery and would hear that his speech is slurred due to a hearing impediment.[1]

¶ 6 After the cross-examination of Officer Verver and prior to re-direct, the trial court took its noon recess. At this point, outside of the presence of the jury, the prosecutor informed the court that he wanted to present evidence that Officer Verver gave Cain a PBT that registered a positive result for the presence of alcohol. The prosecutor explained that he intended to use the evidence to rebut defense counsel's assertion in her opening statement that Cain smelled of alcohol because he spilled beer on himself.[2] After hearing arguments from both sides about the admissibility of the evidence, the county court ruled that the fact that the PBT returned a positive result was inadmissible unless Cain took the stand and testified that he had not been drinking. In that instance, the trial court reasoned that the defense would have opened the door to the prosecutor using

---

1. Information about Cain's planned testimony is based on defense counsel's statements made outside of the presence of the jury.

2. During her narration of the events, defense counsel did not say that Cain had not been drinking. Defense counsel did, however, explain that beer had leaked on Cain's shirt.

the positive PBT result to impeach Cain's testimony.

¶ 7 Ultimately, following a *Curtis* advisement, Cain elected not to testify. *See People v. Curtis,* 681 P.2d 504, 514 (Colo.1984). Defense counsel explained on the record that she advised Cain against testifying in light of the county court's decision that if Cain testified that he had not been drinking, that would open the door for the People to introduce the positive PBT result as impeachment evidence.

¶ 8 The jury found Cain guilty of DWAI and two traffic offenses. Cain appealed to the district court, where he argued that the county court erred when it concluded that the positive PBT result could be used as impeachment evidence if he testified. Cain asserted that this ruling was contrary to Colorado law and also had a chilling effect on his right to testify, as guaranteed by both the United States and Colorado Constitutions. The district court affirmed the county court's decision. It concluded that PBT results are admissible for impeachment purposes.

¶ 9 Cain petitioned this Court for certiorari review, which we granted.[3]

## II. Standard of Review

 ¶ 10 The interpretation of a statute raises a question of law that we review de novo. *Hendricks v. People,* 10 P.3d 1231, 1235 (Colo.2000). When interpreting a statute, our goal is to give effect to the intent of the General Assembly. *People v. Laeke,* 2012 CO 13, ¶ 11, 271 P.3d 1111. To determine the legislative intent, we look to the statutory language itself and give the words and phrases their ordinary and commonly accepted meaning. *Id.*; *Kerns v. Kerns,* 53 P.3d 1157, 1160 (Colo.2002). Where the language is clear, it is not necessary to resort to other tools of statutory construction. *McKinney v. Kautzky,* 801 P.2d 508, 509 (Colo.1990). In this case, because the language of section 42–4–1301(6)(i)(III) is clear, we look no further than the plain words of the statute. *See Laeke,* ¶ 11.

## III. Analysis

¶ 11 The People concede that PBT results are generally inadmissible; however, they argue that the results are nevertheless admissible for impeachment purposes where one party opens the door to the evidence. We disagree. To reach this decision, we first review the language of the statute. Then, we consider the People's argument that there is an exception to the statutory bar on the use of the PBT results as evidence at trial if the results are introduced for impeachment purposes, and we find the argument unconvincing. Finally, we evaluate the effect of the county court's decision on Cain's right to testify at trial and determine that a new trial is warranted.

### A. Section 42–4–1301(6)(i)(III)

 ¶ 12 Section 42–4–1301 permits police officers to conduct preliminary tests using approved devices when investigating a person suspected of DUI or DWAI. *See* § 42–4–1301(6)(i)(I) to (II). Section 42–4–1301(6)(i)(III), however, limits the use of the test results in court proceedings. Specifically, the statute precludes a court from admitting into evidence the results of a PBT *except* when the evidence is used in a probable cause hearing outside of the presence of the jury:

> Neither the results of such preliminary screening test nor the fact that the person refused such test shall be used in any court action except in a hearing outside of the presence of a jury, when such hearing is held to determine if a law enforcement officer had probable cause to believe that the driver committed a violation of this section.

*Id.* "Result," although not defined in the statute, means "something that [arises] as a consequence, effect, issue, or conclusion." *Webster's Third New International Dictionary* 1937 (2002). Therefore, in this context, we read "result" to mean anything that the PBT registers. In other words, we understand the term to encompass: a specific

---

**3.** Specifically, we granted certiorari to consider: "Whether section 42–4–1301(6)(i)(III), C.R.S. (2013), prohibits, for impeachment purposes, admission of Preliminary Breath Test evidence indicating the positive presence of alcohol."

blood alcohol content number; an indication of the presence of alcohol generally; or an indication of the absence of alcohol, e.g., a zero value. Thus, in this case, the People sought to use a PBT result at trial when they attempted to admit into evidence the fact that the PBT indicated the presence of alcohol.

¶ 13 Therefore, the question presently before us is when, if ever, such a result is admissible at trial. We conclude, based on the plain language of the statute, that evidence of a PBT result is only admissible when there is a hearing, held outside of the presence of the jury, "to determine if a law enforcement officer had probable cause to believe that the driver committed [an alcohol related traffic offense]." § 42–4–1301(6)(i)(III). "Under the rule of interpretation *expressio unius exclusio alterius*, the inclusion of certain items implies the exclusion of others." *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo.2001). Hence, we read the General Assembly's inclusion of a single, specific, narrow exception to mean that the General Assembly intended that there be no other exceptions to the rule that PBT evidence is inadmissible.

## B. There Is No Impeachment Exception

¶ 14 Despite the clear language of the statute, the People argue that PBT results should nevertheless be admissible for impeachment purposes to protect the truth-seeking function of a trial. In support of their position, the People cite several cases where courts have held that when one party "opens the door" to otherwise inadmissible evidence, that evidence may be used for impeachment purposes. The People also cite cases from other jurisdictions where the courts have allowed PBT evidence to be admitted.

¶ 15 The People's argument is unpersuasive. While the opening-the-door exception may allow evidence previously found inadmissible to be admitted later, *see, e.g., Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008), the exception does not apply here, where the statute deems the evidence inadmissible at trial. Although the People cite several cases to support their argument that

PBT results should be admissible under a general "opening the door" theory, the cases do not support the People's position because none of them involves a statute that specifically precludes the admission of the evidence at trial. In *Harris v. New York*, 401 U.S. 222, 224–26, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the U.S. Supreme Court held that although a defendant's unwarned custodial statements are generally inadmissible per *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the statements may be introduced for impeachment purposes. Importantly, the U.S. Supreme Court was not asked to interpret a statutory bar on the use of certain evidence at trial but rather was tasked with explaining the scope of its decision in *Miranda. See Harris*, 401 U.S. at 224–26, 91 S.Ct. 643. Similarly, the Colorado cases on which the People rely also do not involve statutory limits on the admissibility of evidence and, therefore, are inapplicable here. *See People v. Tenorio*, 590 P.2d 952, 958 (Colo.1979) (holding that the defendant opened the door to a topic that the court previously ruled to be inadmissible hearsay); *People v. Renfro*, 117 P.3d 43, 46 (Colo.App. 2004) (holding that bolstering testimony, although generally inadmissible, was admissible where the defense implied that an investigation was "less than thorough"); *People v. Braley*, 879 P.2d 410, 416 (Colo.App.1993) (holding that defense counsel opened the door to questions about an investigation of another crime, even though such evidence was otherwise "arguably inadmissible").

¶ 16 By contrast, this case involves a statute that expressly prohibits the admission of PBT results in a criminal trial to determine if the defendant is guilty. The statute specifically limits the use of PBT results to hearings conducted to determine if a police officer had probable cause to arrest the defendant on suspicion of DUI or DWAI. § 42–4–1301(6)(i)(III). This restriction is important because in a probable cause hearing, the issue is whether, at the time of the arrest, "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe an offense has been or is being committed." *People v. Rueda*, 649 P.2d 1106,

1108 (Colo.1982). In other words, the inquiry is about the police officer's knowledge at the time of arrest and is not about whether the suspect is in fact guilty of the charged offense. *See id.* at 1109. Hence, because a probable cause hearing and a trial to establish guilt involve different questions, evidence that is deemed to be sufficiently reliable for use in a probable cause hearing might nevertheless be inadequate for use in a trial to determine guilt. *See People v. Nanes,* 174 Colo. 294, 298–99, 483 P.2d 958, 961 (1971) (holding that evidence used to establish the existence of probable cause "need not be evidence sufficiently competent for admission at the guilt finding process"). Therefore, by limiting the use of PBT results to probable cause hearings conducted outside of the presence of the jury, the General Assembly, through section 42–4–1301(6)(i)(III), established that the results are only competent evidence for determining if the officer had probable cause and may not be used at trial for any purpose, including impeaching a defendant's testimony that he or she had not been drinking.

¶ 17 Given the language of the statute, the People's reliance on several cases from other jurisdictions where courts have held that PBT results may be introduced as impeachment evidence is also unpersuasive. *See City of Westland v. Okopski,* 208 Mich.App. 66, 527 N.W.2d 780, 784 (1994); *Baley v. State,* No. 11–06–00098–CR, 2007 WL 4285266, at *1–2 (Tex.Ct.App. Dec. 6, 2007) (unpublished); *State v. Miller,* No. 04–2065, 2006 WL 228940, at *2 (Iowa Ct.App. Feb. 1, 2006) (unpublished). First, we are not bound by these decisions. Second, these cases are all distinguishable. Although both *Okopski* and *Baley* held that PBT results were admissible for impeachment purposes, neither case involved a statute that forbids the use of PBT results as evidence at trial; therefore, neither is applicable here. *Okopski,* 527 N.W.2d at 784 (analyzing Mich. Comp. Laws § 257.625a); *Baley,* 2007 WL 4285266, at *1–2 (evaluating whether the general rules of evidence, not a specific statute, preclude admission of PBT evidence). Next, while Iowa's statute is similar to Colorado's, the facts in *Miller* are different and make the case inapposite. In that case, the court held

that the fact that the PBT was administered was admissible for the limited purpose of impeaching the defendant's statement that he was physically unable to provide a breath sample; the court did not hold that the *results* of the test could be used for impeachment purposes. *Miller,* 2006 WL 228940, at *1–2.

¶ 18 Thus, we conclude that the language of Colorado's statute precludes the use of PBT results for impeachment purposes at trial, regardless of whether the defendant testifies that he or she had not been drinking.

### C. Application and Remand

¶ 19 Now, we consider the effect of the county court's ruling on Cain's right to testify. The United States and Colorado Constitutions grant a criminal defendant the right to testify on his or her own behalf. *See People v. Skufca,* 176 P.3d 83, 85 (Colo.2008) (citing U.S. Const. amends. V, VI, XIV; Colo. Const. art. II, § 25). "A defendant's right to testify on his own behalf is impermissibly burdened when the court imposes a price for its exercise." *Id.* Such an impermissible burden may exist when inadmissible evidence is erroneously ruled to be admissible if the defendant testifies, and as a result, the defendant must choose between testifying and thereby opening the door to the inadmissible evidence, or forgoing his or her constitutional right to testify. *See id.* at 86 (citing *People v. Evans,* 630 P.2d 94, 96–97 (Colo.App.1981) (holding that the trial court's erroneous ruling allowing otherwise inadmissible statements obtained in violation of *Miranda* to be used as substantive proof of guilt if the defendant testified effectively "forced [the defendant] to forego [sic] his right to testify in order to prevent the prosecution from introducing otherwise inadmissible evidence against him as substantive proof of guilt")).

¶ 20 In this case, the county court's ruling burdened Cain's right to testify, as he had to choose to either forgo his right to testify to prevent inadmissible evidence from being introduced against him or testify and

have the positive PBT result admitted to impeach his testimony.

¶ 21 Therefore, the next question is whether this error was harmless. *See Evans*, 630 P.2d at 96–97. We conclude that it was not. If the jury had the benefit of Cain's testimony, particularly if it had the opportunity to see his eyes and hear him speak, it might have rendered a different verdict. Therefore, we cannot conclude beyond a reasonable doubt that the county court's error did not contribute to the verdict. *See Germany v. People,* 198 Colo. 337, 340, 599 P.2d 904, 906–07 (1979). Thus, the error requires a new trial.

## IV. Conclusion

¶ 22 For the foregoing reasons, we hold that based on the plain language of section 42–4–1301(6)(i)(III), PBT results may not be used in any court action for any purpose except as specifically provided in the statute itself. Thus, we reverse the order of the district court and remand the case to that court with instructions to return the case to the county court for proceedings consistent with this opinion.