Colorado Supreme Court Opinions || April 25, 2016

Colorado Supreme Court -- April 25, 2016
2016 CO 23 No. 13SC996 BP Am. v. Colo. Depât of Revenue

The Supreme Court of the State of Colorado Â 
 2 East 14th Avenue â¢ Denver, Colorado 80203Â  

 

2016 CO 23 7 

 

Supreme Court Case No. 13SC996Â  
 Certiorari to the Colorado Court of Appeals Â 
Court of Appeals Case No. 12CA1897 Â 

 

Petitioner:Â  
 BP America Production Company, Â 
 v.Â  
 Respondents:Â  
 Colorado Department of Revenue and Barbara Brohl, in her official capacity as the Â Executive Director of the Colorado Department of Revenue. Â 

 

Judgment Reversed 
 en banc Â 
 April 25, 2016Â  

 
Attorneys for Petitioner:Â  
 The Poe Law Office LLCÂ  
 Alan PoeÂ  
 Rachel PoeÂ  
 Centennial, Colorado Â 
 
 Holland & Hart LLPÂ  
 Christina Gomez 7 
 Denver, Colorado Â 
 
 Attorneys for Respondents:Â  
 Cynthia H. Coffman, Attorney GeneralÂ  
 Robert H. Dodd, Jr., Senior Assistant Attorney GeneralÂ  
 Noah C. Patterson, Assistant Attorney GeneralÂ  
 Denver, Colorado Â 
 
 Attorneys for Amicus Curiae Colorado Petroleum Association:Â  
 Davis Graham & Stubbs LLPÂ  
 Shannon Wells StevensonÂ  
 Benjamin B. StrawnÂ  
 Denver, Colorado Â 
 Â  
JUSTICE BOATRIGHT delivered the Opinion of the Court. Â 
Â¶1 Coloradoâs âseverance taxâ statute levies a tax on income derived from the sale of natural gas extracted from Colorado.Â  Â§ 39-29-105(1)(a), C.R.S. (2015).Â  In so doing, the statute permits taxpayers to deduct âany transportation, manufacturing, and processing costsâ from revenue in valuing oil and gas resources for tax purposes.Â  Â§ 39-29-102(3)(a), C.R.S. (2015).Â  The question before us is whether this section permits a deduction for the âcost of capitalâ associated with natural gas transportation and processing facilities.Â Â Â  In general terms, the cost of capital is defined as the amount of money that an investor could have earned on a different investment of similar risk.Â  See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1147 (10th Cir. 2000).Â  In this case, the cost of capital is the amount of money that BP America Production Companyâs (âBPâ) predecessors could have earned had they invested in other ventures rather than in building transportation and processing facilities.Â  Petitioner, BP, claims it can deduct the cost of capital because it is a cost associated with transportation and processing activity.Â  Respondent, the Colorado Department of Revenue (âthe Departmentâ), argues that the cost of capital is not a deductible cost because it is not an actual cost.Â  The court of appeals held that the cost of capital is not a deductible cost under the statute.Â  BP Am. Prod. Co. v. Colo. Depât of Revenue, 2013 COA 147, Â¶ 29, __ P.3d __.Â Â  
 
Â¶2 We reverse and hold that the plain language of section 39-29-102(3)(a) authorizes a deduction for any transportation, manufacturing, and processing costs and that the cost of capital is a deductible cost that resulted from investment in transportation and processing facilities.Â  Accordingly, we reverse and remand to the court of appeals with instructions to return the case to the district court for proceedings consistent with this opinion.Â  
I.Â  Facts and Procedural History 

Â¶3 In the 1980s BPâs predecessors in interest[1] developed a method for producing natural gas from coal seams in southwest Colorado.Â  In addition to extracting gas, the companies constructed facilities to process the gas and transport it to market.Â  Since then, the predecessor companies and BP have been successfully producing, transporting, and selling natural gas from the coal seams.

Â¶4 Colorado levies a tax on income generated from the extraction of nonrenewable natural resources, such as natural gas, from within the state.Â  Â§ 39-29-101, C.R.S. (2015).Â Â Â  This tax is called the âseverance tax.âÂ  Id.Â  BP and its predecessor companies filed annual severance tax returns on which they reported income and expenses with respect to gas extracted from land in Colorado.Â  In 2005 BP filed amended severance tax returns for tax years 2003 and 2004, seeking to deduct the cost of capital related to its transportation and processing facilities from revenue generated by natural gas sales.Â Â Â Â  

Â¶5 The Mineral Audit Section of the Department denied the cost of capital deduction.Â  BP requested that the Departmentâs hearing officer review that decision. The hearing officer also prohibited the cost of capital deduction, concluding that the âclear and unambiguous languageâ used in the statute allows deductions for transportation and processing costs only.Â  He distinguished the cost of capital from transportation and processing costs and depreciation, reasoning that the cost of capital is neither a transportation nor processing cost but is an âopportunity cost that reflects the cost alternatives that were forfeited to pursue a certain action.âÂ  The hearing officer continued that the statute does not allow deductions for âtying up money that could have been used elsewhere,â reasoning that BP would recover its investment through depreciation deductions.Â  The hearing officer thus issued a final determination that the cost of capital does not qualify as a deduction under section 39-29-102(3)(a). 

Â¶6 BP contested the final determination in district court.Â  The parties stipulated that if the cost of capital is allowed as a deduction, BP is entitled to refunds of $629,186 and $669,202 plus interest for tax years 2003 and 2004, respectively[2] agreed that there were no disputed issues of material fact and thus submitted cross-motions for summary judgment.Â  Subsequently, the district court ruled that BP is entitled to a refund for its cost of capital because section 39-29-102(3)(a) unambiguously provides a deduction for âany transportation, manufacturing, and processing costs borne by the taxpayer.âÂ  The court reasoned that absent language to the contrary, the cost of capital is a cost related to transportation and processing and is intended by the General Assembly to be included as an allowable deduction.Â  Thus, the district court entered judgment in favor of BP and ordered that the Department refund BP the amounts to which the parties stipulated if the cost of capital were allowed as a deduction.Â Â  Further, they
Â¶7 The Department appealed.Â  The court of appeals reversed the district court and held that the cost of capital is not a deductible transportation and processing cost.Â  BP Am., Â¶Â¶ 30â31.Â  The court of appeals first determined that the severance tax statute was ambiguous as to whether the term âcostsâ includes the cost of capital.Â  Id. at Â¶ 16.Â  The court then relied on other state statutes, a guide from an association of oil and gas accountants, and the possibility that BP would earn a double deduction to conclude that, in the absence of an explicit statement by the legislature, the cost of capital is not deductible under section 39-29-102(3)(a).Â  Id. at Â¶Â¶ 17â30.Â  

Â¶8 We granted BPâs petition for certiorari.[3]

II.Â  Standard of Review 
 
Â¶9 We review questions of statutory construction de novo.Â  People v. Johnson, 2015 CO 70, Â¶ 9, 363 P.3d 169, 174.Â  
III.Â  Analysis 

Â¶10 The issue here is whether the cost of capital is a deductible cost under Coloradoâs severance tax statute.Â  To resolve this issue of first impression, we first provide background on the statute.Â  We then look to its language in order to determine whether the statute is ambiguous.Â  Next we examine whether the cost of capital is a cost under the statute.Â  At the end of our analysis, we determine that the statute is unambiguous and that the cost of capital is a cost under the statute.Â  We conclude by holding that the plain language of section 39-29-102(3)(a) authorizes a deduction for any transportation, manufacturing, and processing costs and that the cost of capital is a deductible cost that resulted from investment in transportation and processing facilities.Â  Accordingly, we reverse and remand to the court of appeals with instructions to return the case to the district court for proceedings consistent with this opinion. 
A.Â  Coloradoâs Severance Tax and the Netback Approach 

Â¶11 In order to interpret the severance tax statuteâs meaning, we must first understand its operation.Â  The severance tax statute levies a tax on income produced from the sale of nonrenewable natural resources extracted from land in Colorado.Â  Â§ 39-29-101(1).Â  This is termed the âseverance taxâ because it taxes the value of nonrenewable natural resources, such as oil and natural gas, extracted or severed from real property in Colorado.Â  Significantly, the severance tax aims to tax the value of the resource at a specific point in timeâthe point at which the resource emerges from beneath the earthâs surface.Â  Id.; see also Wash. Cty. Bd. of Equalization v. Petron Dev. Co., 109 P.3d 146, 152â53 (Colo. 2005) (describing statutory and industry standards for determining value of oil for tax purposes).Â  This point is known in industry terms as the âtop of the wellâ or âwellhead,â and the value of the resource at this point in time is known as the resourceâs âwellhead value.âÂ  Wash. Cty., 109 P.3d at 151, 153.Â  Calculating a resourceâs wellhead value is problematic because resources are not sold at the wellhead but rather are transported, processed, and then sold at a marketaway from the wellhead.[4] See id. at 152. This means that resources are not valued at the time they are extracted from the wellhead, but rather are valued after being transported, treated, and sold. Accordingly, taxpayers must look back and calculate a resourceâs wellhead value after it has been processed, transported, and sold. Coloradoâs severance tax statute prescribes a method for doing so known in the industry as the ânetback approach.â Id. at 152â53; see also Â§ 39-29-102(3)(a). 

Â¶12 The netback approach allows extractors to deduct from revenue âany transportation, manufacturing, and processing costs.âÂ  Â§ 39-29-102(3)(a).Â  This deduction effectively subtracts any post-extraction value added by the extractor, thus valuing the resource at the point at which it emerged from the earthâs surface.Â  The netback approach allows extractors to deduct dollar-for-dollar all of those transportation, manufacturing, and processing costs incurred in adding value to the resource so that it is saleable.Â  Id.Â  This ensures that, for purposes of the severance tax, the extractor is only taxed on the resourceâs wellhead value, rather than the full sale price.Â  Id. 
 
Â¶13 In this case, the gas was transported from the wellhead in southern Colorado to processing facilities in other states and then sold.Â  The sale price, therefore, reflects not the resourceâs wellhead value but rather the resourceâs value after it was transported and processed.Â  Thus, the netback approach dictates that the transportation, manufacturing, and processing costs shall be deducted from the sale price so that BP is taxed on the resourceâs wellhead value, rather than its value after it has been transported and processed.Â  Id. 

Â¶14 Now that we have described the severance tax statuteâs operation, we turn to interpreting its meaning. 
B.Â  The Plain Meaning of Section 39-29-102(3)(a) Allows a Deduction for All Transportation, Manufacturing, and Processing Costs 

Â¶15 Our goal in interpreting a statute is to give effect to the legislatureâs intent.Â  Cain v. People, 2014 CO 49, Â¶ 10, 327 P.3d 249, 252.Â  To determine legislative intent, we first look to the statuteâs language and give its words and phrases their ordinary and commonly accepted meaning.Â  Id.Â  When statutory language is clear, we need not look to other tools of statutory construction.Â  Id.Â  As part of this courtâs de novo review, the court may consider and even defer to an agencyâs interpretation of the statute.Â  Gessler v. Colo. Common Cause, 2014 CO 44, Â¶ 7, 327 P.3d 232, 235.Â  However, courts are not bound by the agencyâs interpretation.Â  El Paso Cty. Bd. of Equalization v. Craddock, 850 P.2d 702, 704 (Colo. 1993).Â  Deference is not warranted where the agencyâs interpretation is contrary to the statuteâs plain language.[5] Gessler Â¶ 7, 327 P.3d at 235.Â Â 

Â¶16 Generally, courts will construe all doubts regarding interpretation of language in a tax statute in favor of the taxpayer.Â  Transponder Corp. of Denver v. Prop. Tax Admâr, 681 P.2d 499, 504 (Colo. 1984).Â  However, âdeductions and exemptions in taxation are recorded as a matter of legislative grace . . . and they are not allowed unless clearly provided for.âÂ  Robinson v. State, 392 P.2d 606, 608 (Colo. 1964) (citations omitted). 

Â¶17 Coloradoâs severance tax statute grants a deduction for âany transportation, manufacturing, and processing costs.âÂ  Â§ 39-29-102(3)(a) (emphases added).Â  The court of appeals held that the statute is ambiguous because the term âcostsâ is reasonably susceptible to different interpretations.Â  BP Am., Â¶Â¶ 15â16.Â  In reaching that conclusion, the court relied on several Colorado cases interpreting the words âcostâ or âcostsâ in various statutory and contractual contexts.Â  Id. at Â¶ 15.Â  In each case that the court relied on, however, the words âcostâ or âcostsâ were not modified by the adjective âany.âÂ  See Douglas Cty. Bd. of Equalization v. Fidelity Castle Pines, Ltd., 890 P.2d 119, 125 (Colo. 1995) (holding that the term âcost of developmentâ in a statute was ambiguous, as it could reasonably refer to direct costs alone, or to direct and indirect costs); Pepcol Mfg. Co. v. Denver Union Corp., 687 P.2d 1310, 1314 (Colo. 1984) (holding that the term âat sellerâs costâ in a contract could reasonably refer to the cost of water used by the purchaser or the cost expended by the seller in furnishing water); Southgate Water Dist. v. City & Cty. of Denver, 862 P.2d 949, 955 (Colo. App. 1992) (holding that the phrase âactual costsâ in contract may or may not include overhead factors); Tripp v. Cotter Corp., 701 P.2d 124, 125â26 (Colo. App. 1985) (holding that the phrase âcost of millingâ in a contract may or may not include depreciation).Â  Omitting the adjective âanyâ changes the context of the word âcosts.â

Â¶18 Â Â As a result, we conclude that these cases are distinguishable because any ambiguity would have been eliminated if the word âcostsâ had been preceded by the adjective âany,â as it is here.Â  âWhen used as an adjective in a statute, the word âanyâ means âall.ââÂ  Stamp v. Vail Corp., 172 P.3d 437, 447 (Colo. 2007).Â  Also, the noun âcostsâ is unambiguous in this context because it means the âprice or expenditureâ borne by BPâs predecessors.Â  Cost, Blackâs Law Dictionary 397 (9th ed. 2009); Â§ 39-29-102(3)(a).Â  By using the phrase âany . . . costs,â the legislature did not distinguish between different types of costs.Â  Â§ 39-29-102(3)(a).Â  Simply, the statute does not allow taxpayers to deduct some transportation, manufacturing, and processing costs but not others.Â  Rather, it unambiguously allows a deduction for all transportation, manufacturing, and processing costs.Â  See Id.Â  Therefore, we give effect to its plain language and conclude that all transportation, manufacturing, and processing costs are deductible under the statute.Â  See Stamp, 172 P.3d at 442â43; Â§ 39-29-102(3)(a).Â Â  

Â¶19 This conclusion is bolstered by comparing the text of the severance tax statute with the relevant property tax statutes, which similarly govern the valuation of oil and gas revenues.Â  The severance tax and property tax statutes are nearly identical except for one key difference:Â  In the severance tax statute, the General Assembly included the phrase phrase âany . . . costs,â but in the property tax statute, the General Assembly excluded the terms âanyâ and âallâ and instead included the qualifying phrase âpursuant to the guidelines established by the administrator.â Compare Â§ 39-29-102(3)(a), with Â§ 39-7-101(1)(d), C.R.S. (2015). The General Assemblyâs inclusion of the phrase âany . . . costsâ in the severance tax statute indicates that the General Assembly intended to include all transportation, manufacturing, and processing costs; in contrast, the General Assemblyâs inclusion of the words âpursuant to guidelines established by the administratorâ (and its exclusion of âanyâ and âallâ) in the property tax statute indicates that the General Assembly meant to provide the Administrator with discretion to decide whether a particular cost is deductible. See Loughrin v. United States, 134 S. Ct. 2384, 2390 (2014) (noting that the United States Supreme Court presumes that Congress intends a difference in meaning when Congress includes particular language in one section of a statute but omits it in another); see also Deutsch v. Kalcevic, 140 P.3d 340, 342 (Colo. App. 2006) (âWhen the [General Assembly] includes a provision in one statute, but omits that provision from another similar statute, the omission is evidence of its intent.â). Accordingly, we conclude that section 39-29-102(3)(a) permits a deduction for all transportation, manufacturing, and processing costs.

Â¶20 Having determined that the plain meaning of the severance tax statute allows a deduction for all transportation, manufacturing, and processing costs, we must now determine whether the cost of capital is a transportation, manufacturing, or processing cost under the statute. 
 
C.Â  The Cost of Capital Is a Deductible Transportation, Manufacturing, and Processing Cost Under Section 39-29-102(3)(a) 
Â¶21 Generally, the cost of capital is âthe rate of return that is required to induce investors to purchase the securities of a firm.Â  This rate of return is the same as the investorâs opportunity cost of capital, which is the rate of return that an investor can earn on an investment of similar risk.â Atl. Richfield, 226 F.3d at 1147 (citations omitted).Â  In other words, the cost of capital is the amount of money that an investor could have earned on a different investment of similar risk.Â  See Id.Â Â  In this case, the cost of capital is the amount of money that BPâs predecessors could have earned had they invested in other ventures rather than in building transportation and processing facilities.Â  The investment in other ventures must be of similar risk and must be calculated over the time period beginning with the initial investment in the new facilities and ending with the first depreciation deduction for the same facilities.Â Â  
 
Â¶22 The cost of capital is a concept that recognizes that BPâs predecessors had investment choices when they invested money to construct the transportation, manufacturing, and processing facilities that service their natural gas wells.Â  Alternatively, they could have purchased facilities to service the wells or paid a third party to transport and process the natural gas.Â Â  
 
Â¶23 If BPâs predecessors had purchased existing facilities to service their wells, then they would have immediately begun to recover the cost of their investment through depreciation deductions.Â  Then, the predecessors could have invested the proceeds in another investment and earned a return on that investment years before BPâs predecessors could begin to recover their investment to build the facilities.Â  The same would be true if the predecessors had chosen to pay a third party to transport and process the natural gas because the amounts paid to the third party would be transportation, manufacturing, and processing costs which are deductible under the severance tax statute.Â  Â§ 39-29-102(3)(a).Â  Simply, if the predecessors had chosen an alternative investment rather than building the facilities, they would have recovered their investment earlier in time.Â  This earlier cost recovery is more valuable than the delayed cost recovery because the predecessors could have invested the proceeds and earned a return before recovering the cost of their investment to build the facilities.Â  Accordingly, the cost of capital for choosing to construct the facilities is the difference between the amount of cost recovery that the predecessors actually received from constructing the facilities, and the amount of cost recovery or deductions that the predecessors could have received if they had invested in existing facilities or paid a third party.Â  The question here is whether the amount that BPâs predecessors could have earned or recovered from an alternative investmentâthe cost of capitalâis a transportation, manufacturing, and processing cost under the severance tax statute.predecessors could begin to recover their investment to build the facilities.Â  The same would be true if the predecessors had chosen to pay a third party to transport and process the natural gas because the amounts paid to the third party would be transportation, manufacturing, and processing costs which are deductible under the severance tax statute.Â  Â§ 39-29-102(3)(a).Â  Simply, if the predecessors had chosen an alternative investment rather than building the facilities, they would have recovered their investment earlier in time.Â  This earlier cost recovery is more valuable than the delayed cost recovery because the predecessors could have invested the proceeds and earned a return before recovering the cost of their investment to build the facilities.Â  Accordingly, the cost of capital for choosing to construct the facilities is the difference between the amount of cost recovery that the predecessors actually received from constructing the facilities, and the amount of cost recovery or deductions that the predecessors could have received if they had invested in existing facilities or paid a third party.Â  The question here is whether the amount that BPâs predecessors could have earned or recovered from an alternative investmentâthe cost of capitalâis a transportation, manufacturing, and processing cost under the severance tax statute.
 
Â¶24 We have not addressed whether the cost of capital is a deductible transportation, manufacturing, and processing cost in this context.Â  The Department asserts that the cost of capital is not an actual cost; instead, it is a mere âbenefit forgone to pursue a different opportunity.âÂ  As such, the Department reasons that the cost of capital is not deductible under the severance tax statute.Â Â 
 Â¶25 The plain language of the severance tax statute does not support the Departmentâs reasoning.Â  Rather, the plain language shows that the cost of capital is a cost in this context.
 
Â¶26 Other authorities have also determined that the cost of capital is a cost.Â  For example, in the property tax context, oil and gas leasehold lands are valued according to the sale price of the oil and gas âminus deductions for gathering, transportation, manufacturing, and processing costs borne by the taxpayer pursuant to guidelines established by the administrator.âÂ  Â§ 39-7-101(1)(d).Â  This property tax statute is similar to the severance tax statute at issue here because both value the extracted resource at the wellhead using the netback approach.Â  See Id.; Â§ 39-29-102(3)(a).Â  Thus, the statutes are worthy of comparison given that they both value extracted resources using the same method. The Property Tax Administratorâs guidelines under this statute provide that the cost of capital, identified as âreturn on investment,â is a deductible cost in valuing oil and gas resources. 3 Assessorsâ Reference Library Â§ VI at 6.44 (rev. Jan. 2016). Accordingly, the Colorado Property Tax Administratorâs guidelines grant taxpayers a deduction for the cost of capital associated with their âtransportation . . . and processing costsâ in valuing oil and gas leasehold lands. Id. at 6.25. 
 
Â¶27 Similarly, in the context of valuing oil and gas production for the purpose of royalty payments to landowners, the Tenth Circuit has held that, absent a lease provision to the contrary, oil and gas lessees can deduct the cost of capital attributable to transportation facilities.Â  Atl. Richfield, 226 F.3d at 1154.Â Â  
 
Â¶28 Also, the cost of capital is recognized as a deductible transportation or processing cost in valuing oil and gas production for the purpose of calculating royalty payments due under federal and Indian oil and gas leases.Â  See 30 C.F.R. Â§ 1206.111(b)(4) (2015) (permitting cost of capital transportation allowance for valuing oil produced from federal oil leases); 30 C.F.R. Â§ 1206.157(b)(2) (same for transportation allowance for valuing gas produced from federal gas leases); 30 C.F.R. Â§ 1206.159(b)(2) (same for processing allowance for valuing gas produced from federal gas leases); 30 C.F.R. Â§ 1206.178(b)(2) (same for transportation allowance for valuing gas produced from Indian gas leases).Â Â  
Â¶29 We are persuaded that the cost of capital is a cost in this case.Â  Accordingly, it is deductible under the severance tax statute given that âany transportation, manufacturing, and processing costsâ are deductible.Â  Â§ 39-29-102(3)(a).
 
Â¶30 Finally, the Department contends that we should not grant the cost of capital deduction because it would allow BP to recover its cost twiceâonce through the cost of capital deduction and once through the depreciation deduction.Â  The Departmentâs argument is misplaced.Â  Allowing BP to deduct the cost of capital does not mean that BP will recover its cost twice.Â  Rather, the cost of capital is a deduction for the costs that result from the opportunity cost of investing money in transportation and processing facilities years before a return.Â  The depreciation deduction, on the other hand, is a deduction for the âdecline in an assetâs value because of use, wear, obsolescence, or age.âÂ  Depreciation, Blackâs Law Dictionary, 506 (9th ed. 2009).Â  In short, the cost of capital measures the cost of making the investment, whereas depreciation measures the useful life of the asset.Â  Accordingly, allowing BP the cost of capital deduction does not mean that BP is receiving a double deduction. 
IV.Â  Conclusion 

Â¶31 For the foregoing reasons, we hold that the plain language of section 39-29-102(3)(a) authorizes a deduction for any transportation, manufacturing, and processing costs and that the cost of capital is a deductible cost that resulted from investment in transportation and processing facilities.Â  Accordingly, we reverse and remand to the court of appeals with instructions to return the case to the district court for proceedings consistent with this opinion. 
 
1 BP is the successor in interest to Atlantic Richfield Company and Amoco Production Company by virtue of its mergers with these companies.
2 It is unclear from the record precisely how the parties calculated the numbers to which they stipulated. 

 3 We granted review of the following issue: 

Whether the court of appeals erred in holding that the phrase âany transportation, manufacturing, and processing costs borne by the taxpayerâ in the Colorado oil and gas severance tax statute, section 39-29-102(3)(a), C.R.S. (2015), excludes the cost of capital that a taxpayer invests in transportation and processing facilities. 

4 The record in this case does not reflect any transactions that took place at the wellhead. 
5 The Department argues that we should defer to its interpretation of the statute in this case because it conforms to the statutory provisions and is reasonably supported by the Departmentâs reasoning.Â  See Colo. Depât of Revenue v. Woodmen of the World, 919 P.2d 806, 817 (Colo. 1996).Â  We disagree and do not defer to the Departmentâs interpretation here for three reasons.Â  First, courts independently review legal determinations.Â  See M&J Leasing Co. v. Exec. Dir. of Depât of Revenue, 796 P.2d 28, 30 (Colo. App. 1990).Â  Second, deference may not be appropriate where an agencyâs construction of a statute has not been uniform.Â  See Woodmen, 919 P.2d at 817. Here, the Department allowed BPâs predecessors to deduct the cost of capital under the severance tax regime prior to its final determination.Â  Finally, courts have been reluctant Gessler, 
to defer to an agencyâs interpretation that is not promulgated through rulemaking.Â  See Command Commcâns, Inc. v. Fritz Cos., 36 P.3d 182, 187 (Colo. App. 2001) (citing United States v. Mead Corp., 533 U.S. 218 (2001)).Â  Here, prior to the Departmentâs final decision in this case, its only interpretation of the statute was contained in an answer to a âFrequently Asked Questionâ posted on its website, which was published without any reasoning for disallowing the deduction.Â Â  

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Supreme Court Opinions || April 25, 2016

Back