2017 CO 42

**SAMUEL J. STOORMAN & ASSOCIATES, P.C., Petitioner,**

v.

**Brian Todd DIXON, Respondent.**

**Supreme Court Case No. 15SC710**

Supreme Court of Colorado.

May 15, 2017

Attorneys for Petitioner: Samuel J. Stoorman & Associates, P.C., Samuel J. Stoorman, Nicole Hanson, Denver, Colorado

Attorneys for Respondent: Jody Brammer-Hoelter, LLC, Jody Brammer-Hoelter, Louisville, Colorado

Attorneys for Amicus Curiae Colorado Chapter of the American Academy of Matrimonial Lawyers: Colorado Chapter of the American Academy of Matrimonial Lawyers, David M. Johnson, Colorado Springs, Colorado, Sherman & Howard L.L.C., Jordan M. Fox, Kara L. Chrobak, Denver, Colorado

JUSTICE BOATRIGHT delivered the Opinion of the Court.

¶1 Samuel J. Stoorman & Associates, P.C. ("the Firm"), represented Kristy Casagranda ("Wife") during dissolution proceedings against her then-husband Brian Todd Dixon ("Husband"). The Firm asserted a charging lien for its fees under Colorado's attorney's

lien statute against assets the court awarded to Wife during the divorce and obtained a court order recognizing that lien. The firm later filed a motion for an entry of judgment enforcing its charging lien against maintenance payments Husband owed to Wife, seeking to have Husband redirect those payments to the Firm. The trial court denied the motion, concluding that an attorney's charging lien cannot attach to a maintenance award. The court of appeals affirmed. In re Marriage of Dixon, 2015 COA 99, —— P.3d ——. Because the attorney's lien statute's plain language provides that a charging lien attaches to any judgment that an attorney helps a client obtain, we reverse. We hold that an attorney's charging lien may attach to an award of spousal maintenance. Hence, we remand the case for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶2 Husband and Wife divorced in 2009. The Firm represented Wife during the dissolution proceedings. As part of the dissolution decree, the trial court entered permanent orders directing Husband to pay Wife monthly maintenance for seventy-two months. Shortly after the entry of permanent orders, the Firm sought recognition of its charging lien for the fees Wife owed it. The trial court entered a judgment against Wife for the unpaid fees. Wife did not pay the Firm, and in 2012 the Firm sent a letter to Husband advising him that its charging lien for Wife's fees had attached to her maintenance payments, and so Husband should redirect payments to the Firm. Husband continued to make maintenance payments to Wife. Then, in 2014, the Firm filed a motion seeking an entry of judgment against Husband on the theory that it had an interest in maintenance payments that Husband owed to Wife. The trial court denied the motion, concluding that an attorney's charging lien cannot be enforced against a maintenance award, and it awarded Husband attorney fees for costs he incurred defending against

the Firm's motion. The Firm appealed, and the court of appeals affirmed. We granted certiorari.[1]

## II. Standard of Review

¶3 This court reviews questions of statutory interpretation de novo. People ex rel. O.C., 2013 CO 56, ¶ 13, 308 P.3d 1218, 1221.

## III. Analysis

¶4 We begin by analyzing the plain language of Colorado's attorney's lien statute, section 12-5-119, C.R.S. (2016), and we hold that the statute's plain language applies to maintenance awards. Then, we consider Husband's argument that this court should look beyond the plain language of the statute and exempt maintenance awards from attorney's charging liens. We reject that argument because the statute's plain language resolves the inquiry.

### A. Plain Language

¶5 First, we interpret Colorado's attorney's lien statute. If a statute's language is unambiguous, we apply it as written and do not resort to other methods of statutory construction. O.C., ¶ 13, 308 P.3d at 1221.

¶6 Colorado's attorney's lien statute provides that an attorney's charging lien attaches to any judgments that attorneys have helped their clients obtain:

> All attorneys- and counselors-at-law shall have a lien on any money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client.

§ 12-5-119 (emphasis added).

¶7 Our decision in BP America Production Co. v. Colorado Department of Revenue, 2016 CO 23, 369 P.3d 281, interprets

---

1. We granted certiorari to review the following issues:
 1. Whether a statutory attorney's lien attaches to the client's receipt of an award for spousal maintenance.

2. Whether public policy prohibits an attorney from foreclosing its statutory lien upon spousal maintenance payments awarded to the client.

similar · statutory language and guides our approach in this case. In BP America, we held that Colorado's severance tax statute, which grants a deduction for "any transportation, manufacturing, and processing costs," was unambiguous. Id. at ¶¶ 17–18, 369 P.3d at 285–86. We reasoned that, although the word "costs" may be susceptible to different interpretations, the modifier "any" made clear that all costs were deductible. Id. at ¶ 18, 369 P.3d at 286. Similarly, section 12-5-119 gives attorneys "a lien on any . . . judgment they may have obtained or assisted in obtaining, in whole or in part." (Emphasis added.) This broad language leads us to conclude that the lien may attach to all types of judgments. A dissolution-of-marriage decree that orders maintenance payments is a judgment. See C.R.C.P. 54(a) (defining judgment as a "decree and order to or from which an appeal lies"); Gee v. Crabtree, 192 Colo. 550, 560 P.2d 835, 836 (1977) (treating a dissolution decree as a judgment for purposes of section 12-5-119, and holding that an attorney may enforce his charging lien in either the dissolution action that gave rise to the lien claim or an independent action). The plain language of the attorney's lien statute applies to maintenance payments that the attorney may have obtained or assisted in obtaining, and therefore we hold that an attorney's charging lien may attach to an award of spousal maintenance.

### B. Alternate Arguments

¶8 Second, we turn to Husband's arguments that maintenance payments should be exempt from attachment despite the plain language of the attorney's lien statute.

 ¶9 Husband argues that, despite the attorney's lien statute's broad language, an attorney's lien cannot attach to maintenance payments because such payments are exempt from certain debt-collection methods under section 13-54-102(1)(u), C.R.S. (2016). Section 13-54-102 lists property that is exempt from levy and sale under writ of attachment or writ of execution.[2] This statute exempts maintenance payments from particular methods of debt collection; however, this does not change our analysis here. As the court of appeals pointed out in In re Marriage of Etcheverry, 921 P.2d 82, 83 (Colo.App.1996), "A proceeding to enforce an attorney's charging lien is not a levy upon property under either a writ of execution or a writ of attachment, and it does not, therefore, fall within the literal terms of these statutes." Because the language of the attorney's lien statute is unambiguous, the levy exception for maintenance payments in section 13-54-102 is irrelevant to whether such payments fall within the scope of the attorney's lien statute.[3]

¶10 We therefore also reject Husband's contention that the timing of the amendment adding maintenance payments to the list of exempt property in section 13-54-102 indicates the General Assembly's intent to protect maintenance payments more broadly than section 13-54-102's plain language suggests. The General Assembly added maintenance payments to section 13-54-102 after the court of appeals recognized broad debt-collection protections for child support payments in Etcheverry. See S.B. 07-158, 66th Gen. Assemb., Reg. Sess. (Colo. May 14, 2007). Child support was exempt from levy and sale under section 13-54-102 at the time the court of appeals decided Etcheverry, and so Husband reasons that maintenance should receive the same protections as child support. Any indication of legislative intent that we might discern from the timing of the amend-

---

**2.** The statute does not define "levy," "sale," "writ of attachment," or "writ of execution." We need not define the terms here because the parties do not dispute that the remedy the Firm seeks lies outside the definitions of these terms.

**3.** The Firm's ability to attach its lien is a meaningful remedy. While an attorney may not seek levy or sale to enforce a lien against a maintenance payment under section 13-54-102(1)(u), he may obtain a court order in the dissolution action recognizing that his charging lien is proper and attaches to maintenance payments. This is significant because, as both the trial court and the court of appeals pointed out in this case, without such an order the spouse who pays maintenance must risk contempt of court for failure to pay if he recognizes an attorney's lien and redirects payments to the attorney. See Dixon, ¶ 6. Had the trial court had the benefit of this decision and entered an order directing Husband to forward maintenance payments to the Firm when the Firm first sought enforcement of its lien against Wife's maintenance, Husband would not have had to decide whether to ignore notice of the lien or direct his payments to the Firm and risk contempt.

ment, however, does not override section 12-5-119's plain language. See, e.g., Vigil v. Franklin, 103 P.3d 322, 327 (Colo.2004) ("If a statute is clear and unambiguous on its face, then we need not look beyond the plain language and 'we must apply the statute as written.'" (citation omitted) (quoting In re 2000–2001 Dist. Grand Jury, 97 P.3d 921, 924 (Colo.2004))). Thus, section 13-54-102 does not impact our analysis of section 12-5-119.

¶11 Finally, Husband argues that, despite the plain language of the attorney's lien statute, attorneys' liens should not attach to maintenance payments for public policy reasons. But we give effect to the plain language of a statute unless the result is absurd or unconstitutional. Rodriguez v. Schutt, 914 P.2d 921, 925 (Colo.1996). The General Assembly sets public policy, and express statutory language is the main vehicle it uses. When a statute is unambiguous, public policy considerations beyond the statute's plain language have no place in its interpretation. See Resolution Tr. Corp. v. Heiserman, 898 P.2d 1049, 1054 (Colo.1995) ("[I]f courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said."). "We may not substitute our view of public policy for that of the General Assembly." Swieckowski by Swieckowski v. City of Ft. Collins, 934 P.2d 1380, 1387 (Colo.1997).

¶12 To support his policy argument, Husband argues that Colorado case law recognizes a public policy that protects child support from attachment of attorney's liens. See Etcheverry, 921 P.2d at 83–84; Hall v. Hall-Stradley, 776 P.2d 1166, 1166–67 (Colo. App.1989). But we conclude protections for child support payments are not based on public policy considerations; rather the protection is rooted in the legal principle that the right to child support belongs to the child, not the parents. See McQuade v. McQuade, 145 Colo. 218, 358 P.2d 470, 472 (1960) ("The inherent right to support belongs to the child. . . ."). Maintenance, on the other hand, is a payment that benefits the recipient spouse. See § 14-10-114(1), C.R.S. (2016). Hence, child support payments are distinguishable from maintenance payments in this context. As such, an attorney's lien

resulting from fees that the recipient spouse incurred may attach to maintenance payments owed to that spouse. This approach finds support in a number of other jurisdictions with similarly broad attorney's lien statutes. See Carnes v. Shores, 55 Ala.App. 608, 318 So.2d 305, 307 (1975); McDonald v. Johnson, 229 Minn. 119, 38 N.W.2d 196, 199 (1949) (discussing a lien against a lump-sum alimony payment); Jasper v. Smith, 540 N.W.2d 399, 403–05 (S.D.1995); Hampton v. Hampton, 85 Utah 338, 39 P.2d 703, 706 (1935). But see, e.g., Dyer v. Dyer, 438 So.2d 954, 955 (Fla. Dist. Ct. App. 1983).

## IV. Conclusion

¶13 We hold that an attorney's lien may attach to an award for spousal maintenance. Accordingly, we reverse the judgment of the court of appeals, vacate the award of attorney fees, and remand the case to that court with instructions to return it to the trial court for proceedings consistent with this opinion.

JUSTICE GABRIEL does not participate.