*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANNE MARY GREENWAY,

UNPUBLISHED
July 27, 2023

Plaintiff-Appellant,

v

No. 364507
Grand Traverse Circuit Court

DONALD SAFRONOFF,

Family Division
LC No. 2015-012099-DM

Defendant-Appellee.

Before: CAMERON, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

Plaintiff-appellant mother appeals by right the trial court's order denying her motion to change the domicile of the parties' child, NS, and granting the motion of defendant-appellee father to change NS's custody to primary physical and sole legal custody with father. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Mother and father were divorced in 2016. They have one minor child, NS. Pursuant to the judgment of divorce, the parties had joint legal custody of NS and mother had primary physical custody. Under a January 2020 parenting time order, defendant's parenting time during the school year consisted of consecutive weekends, with plaintiff having parenting time every third weekend, and defendant's summer parenting time was to occur on alternating weeks.

In June 2020, mother moved back to Traverse City from Gaylord.[1] Mother had been working at Home Depot while she lived in Gaylord, and she transferred to a Home Depot store located in Traverse City when she moved there in 2020. At the Traverse City Home Depot, mother worked Tuesdays, Wednesdays, and Thursdays from 5:00 a.m. to 1:30 p.m.

---

[1] Mother testified that she had lived in Traverse City before she moved to Gaylord in June 2019.

Mother enrolled NS in second grade at Grand Traverse Academy (GTA) for the 2020-2021 school year. Mother also testified that she and father followed the January 2020 parenting time order with respect to summer parenting time during 2020 "[w]ith the exception of the days that [father] had to work and needed [mother] to watch [NS]." They continued to follow the parenting time schedule in the order once school started and during 2021.

At some point, mother was informed of a job opportunity at a Home Depot location in Allen Park. She accepted the position and resulting transfer on January 20, 2022. Her payrate in the new position remained at $17.50 per hour, but her schedule was increased to five days a week, Monday through Friday, from 5:00 a.m. to 1:30 p.m. She did not discuss the matter with father before accepting the transfer. On January 24, 2022, mother notified her landlord in Traverse City that she was moving.

On February 8, 2022, mother filed a motion to relocate the child's residence. Mother argued that her new position would provide her a substantial increase in income that was necessary because she was "the only parent employed and able to financially care for [NS]." Mother further argued that father had not worked in more than a year, owed approximately $9,000 in child support, and had recently filed for bankruptcy. Additionally, mother argued that she had already secured new housing near her new job that was located near excellent public schools and that the cost of housing was prohibitively high in Traverse City.

The court entered an order referring mother's motion to the referee for an evidentiary hearing to be held on February 24, 2022. Father requested an adjournment on the basis that he was recovering from COVID-19 and needed time to find counsel and prepare for the hearing. Father also sought dismissal of mother's motion on the ground that the court had denied a similar motion by mother in June 2019 and dismissed another similar motion in January 2021. Father maintained that the move was not in NS's best interest. The trial court granted father's request to adjourn the evidentiary hearing and entered orders for both parties' motions to be heard before the referee at a hearing to be held on March 14, 2022. The trial court ordered that "all other terms of the Court's prior orders in this case shall remain in effect until further order of this Court."

Mother began her new job at the Allen Park Home Depot on February 14, 2022, and she moved out of her Traverse City apartment at the end of February. She arranged for NS to stay at a hotel with mother's mother so NS could continue attending school at GTA.

On March 4, 2022, father's counsel filed his appearance. The referee subsequently adjourned the hearing from March 14, 2022, to May 5, 2022, "DUE TO CONFLICT OF INTEREST" between the referee and father's counsel "WHICH EXPIRES APRIL 1, 2022." The referee explained that he had previously worked at the law firm that now represented father and was prohibited from hearing matters brought by his former law firm for a two-year period that began on April 1, 2020.

Meanwhile, NS's last day at GTA was March 11, 2022. He then moved with mother to Dearborn, and mother enrolled him at Nowlin Elementary. NS's first day at his new school was March 15. In Dearborn, mother and NS lived in a house owned by mother's mother.

On May 2, 2022, mother moved to adjourn the evidentiary hearing again based on the unavailability of plaintiff's counsel. The trial court granted the motion and rescheduled the hearing for June 17, 2022.

On June 7, 2022, father filed a motion to modify custody, parenting time, and child support. Father argued that mother had an established history over the past few years of unilaterally changing NS's school and that this was harming NS because he had to continuously make new friends and adjust to new classrooms throughout his lower elementary school years. According to father, mother's actions showed her disregard for the parties' joint legal custody arrangement. Father further argued that mother was disregarding the joint legal custody arrangement by failing to consult father before having NS vaccinated against the flu and COVID-19. Father asked to be granted sole legal custody and primary physical custody.

An evidentiary hearing was held before the referee on June 17, 2022, to address the three pending motions related to NS's domicile and custody. First, the referee heard oral arguments from the parties and addressed father's motion to dismiss. The referee denied the motion, concluding that mother had alleged new circumstances that differed from her previous motions seeking to change the child's domicile and that it would be premature to dismiss the motion without holding an evidentiary hearing to resolve the disputed issues of material fact. The referee then proceeded with the evidentiary hearing, which was held over the course of two days.

Following the evidentiary hearing, the referee issued a written recommendation and order. The referee concluded that mother's motion should be denied because she had failed to establish by a preponderance of the evidence that changing the child's residence was warranted under the factors in MCL 722.31(4). The referee also concluded that father's motion should be granted and that father should be awarded sole legal custody and primary physical custody. The referee found that father had proven by clear and convincing evidence that this change in custody was in the child's best interest. The trial court signed the referee's recommendation and order, after which mother objected and requested a de novo hearing. Following the de novo hearing, the trial court issued a written decision and order affirming and adopting the referee's findings of fact and conclusions of law.

Mother now appeals. Further facts necessary for the resolution of the issues on appeal will be discussed in the analysis below.

## II. REFEREE DISQUALIFICATION

On appeal, mother first argues that the trial court's order should be vacated and the matter remanded for a new hearing on her motion to change the child's residence and father's motion to change custody and parenting time because the referee should have been disqualified under MCR 2.003(C)(1)(e) based on his former employment relationship with the law firm that represented father in the trial court. Mother complains that the referee committed reversible error by adjourning the proceedings to avoid the need for disqualification instead of simply disqualifying himself. Additionally, mother argues that she was prejudiced by the referee's decision because it caused unnecessary delay in the time-sensitive issue of the child's domicile. Mother argues in the alternative that even if the referee did not err by adjourning the proceedings, the referee should have nonetheless disqualified himself under MCR 2.003(C)(1)(b) to avoid an appearance of

impropriety. Finally, mother also contends that the trial court erred in its de novo review by ignoring the issue of disqualification.

"This Court reviews for an abuse of discretion a trial court's factual findings regarding a motion for disqualification while its application of the facts to the law is reviewed de novo." *TT v KL*, 334 Mich App 413, 431; 965 NW2d 101 (2020). We review de novo, as a question of law, the proper interpretation and application of a court rule. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

As relevant to mother's appellate arguments, MCR 2.003(C)(1) provides as follows:

> (1) Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> \* \* \*
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.
>
> \* \* \*
>
> (e) The judge was a partner of a party, attorney for a party, or a member of a law firm representing a party within the preceding two years.

The court rule further provides that in the trial court, "[t]o avoid delaying trial and inconveniencing the witnesses, all motions for disqualification must be filed within 14 days of the discovery of the grounds for disqualification[,]" and "[i]f the discovery is made within 14 days of the trial date, the motion must be made forthwith." MCR 2.003(D)(1)(a). "Untimely motions in the trial court, the Court of Appeals, and the Supreme Court may be granted for good cause shown." MCR 2.003(D)(1)(d). "If a motion is not timely filed in the trial court, the Court of Appeals, or the Supreme Court, untimeliness is a factor in deciding whether the motion should be granted." MCR 2.003(D)(1)(d).

Here, mother admits in her appellate brief that she never filed a motion to disqualify the referee. Although she complained at the June 17 evidentiary hearing about the delay that had occurred in the proceedings, which was only partly attributable to the referee's relatively brief adjournment of the proceedings after father hired the referee's former law firm, she never expressly requested that the referee disqualify himself. Mother does not direct our attention to any portion of the record where she actually made a request to disqualify the referee. Moreover, mother apparently never made such a request despite the fact that she was aware of the asserted conflict of interest in March 2022 when the referee adjourned the proceedings. She also failed to raise the issue of disqualification in her objections to the referee's recommended order, which would explain why the trial court did not address the issue in its order following the de novo hearing.

Because mother did not comply with the procedural requirements in MCR 2.003 for seeking judicial disqualification, despite being aware of the grounds she now asserts warranted disqualification, mother waived this issue. *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 23; 436 NW2d 70 (1989) (stating that any claim of judicial disqualification was waived by the failure to pursue the remedy provided by MCR 2.003). Mother's complaints in the trial court about delays in the proceedings do not constitute requests for disqualification of the referee. See *City of Westland v Okopski*, 208 Mich App 66, 72; 527 NW2d 780 (1994) ("An appeal based on one ground is not preserved where the objection at trial was on a different ground."). Additionally, mother's general complaints about rulings that were not in her favor were insufficient to demonstrate judicial bias. See *TT*, 334 Mich App at 432 ("[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality.") (quotation marks and citations omitted).

### III. MOTHER'S MOTION TO RELOCATE CHILD'S RESIDENCE

Next, mother argues that her motion to relocate the child's residence should have been granted because she established by a preponderance of the evidence that each of the factors in MCL 722.31(4) weighed in her favor.

> This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the "great weight of the evidence" standard. " 'An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias.' " This Court "may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction." However, "where a trial court's findings of fact may have been influenced by an incorrect view of the law, our review is not limited to clear error." A trial court's findings regarding the existence of an established custodial environment are reviewed under the "great weight of the evidence" standard and must be affirmed unless the evidence clearly preponderates in the opposite direction. This Court reviews questions of law de novo. [*Rains v Rains*, 301 Mich App 313, 324-325; 836 NW2d 709 (2013) (citations omitted; alteration in original).]

MCL 722.31 provides in relevant part:

> (1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued.

> (2) A parent's change of a child's legal residence is not restricted by subsection (1) if the other parent consents to, or if the court, after complying with

-5-

subsection (4), permits, the residence change. This section does not apply if the order governing the child's custody grants sole legal custody to 1 of the child's parents.

* * *

(4) Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

"The party requesting the change of domicile has the burden of establishing by *a preponderance of the evidence* that the change is warranted." *Rains*, 301 Mich App at 326-327 (quotation marks and citation omitted).

The first step in addressing a motion for a change of domicile is to "determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) . . . support a motion for a change of domicile. *Rains*, 301 Mich App at 325. If the trial court finds that the factors do not support a change of domicile, then there is no need to continue with the subsequent steps of analysis and the motion should be denied. See *id*. (explaining the "four-step approach" for deciding a motion for a change of domicile). Here, mother's motion for a change of domicile was denied based on the referee's determination, which was also adopted by the trial court, that mother had failed to demonstrate that the factors in MCL 722.31(4) supported a change in domicile.

The first factor is "[w]hether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent." MCL 722.31(4)(a). Regarding this

factor, the referee found that mother's move had the capacity to financially improve her life by increasing her pre-tax disposable income by approximately $1,720 per month. This conclusion was based on the referee's findings that mother's transfer to the Allen Park Home Depot would result in an increase in her weekly gross income of $280 and that by moving into her mother's home in Dearborn, mother would save $507 per month in rent based on what she had previously paid to rent her apartment in Traverse City.

However, the referee further found that any benefit to NS from the increase in mother's disposable income was "emphatically outweighed" by the negative effects the move would have on the nature of NS's relationship with father, as well as on NS's peer relationships and community activities that were established in Traverse City. The referee cited the evidence that father had frequent informal contact, beyond formal scheduled parenting time, with NS through regularly meeting NS at school for lunch and attending NS's medical appointments and sporting events, which demonstrated that father was an involved parent throughout the week and not just a "weekend parent." The referee also cited evidence that NS had more friends and established activities, such as participation in multiple sports, in Traverse City than in Dearborn. Moreover, the referee found that there was a strong bond between NS and father, and the referee stated that there was no compelling evidence that NS ever went without appropriate food, shelter, or clothing while living with mother in Traverse City. The referee found that mother's proposed move would fundamentally alter the established pattern of NS receiving frequent and meaningful contact with both parents throughout the week. Accordingly, the referee found that this factor favored father.

Based on our review of the record, the evidence does not clearly preponderate in the opposite direction. *Rains*, 301 Mich App at 324. Although it "is well established that the relocating parent's increased earning potential may improve a child's quality of life," *Rittershaus v Rittershaus*, 273 Mich App 462, 466; 730 NW2d 262 (2007), it is also proper in evaluating the effect on the child's quality of life to consider the impact the move will have on the child's day-to-day relationship with the other parent, *Dick v Dick*, 147 Mich App 513, 520-521; 383 NW2d 240 (1985).

The next factor is the "degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule." MCL 722.31(4)(b). The referee found that this factor did not favor either party, noting that there was evidence that father consistently exercised his parenting time and that mother consistently cooperated in providing father with his court-ordered parenting time. The record supports the referee's finding on this factor.

The next factor is the "degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification." MCL 722.31(4)(c). The referee found that this factor favored father, relying on much of the previously discussed evidence about father's consistent involvement in NS's life during weekdays throughout the school year. The referee found that the "proposed move would not realistically preserve the nature of the parental relationship that currently exists between [father] and the child" because it would "disrupt the

child's ready access to [father] and impair his ability to receive guidance, structure, and comfort from [father]." The record evidence does not clearly preponderate in the opposite direction. *Rains*, 301 Mich App at 324.

The next factor is the "extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation." MCL 722.31(4)(d). The referee found that this factor was not applicable because mother was not proposing any material reduction in father's overnights that would result in an increase in his child support obligation.

Finally, the last factor considers "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.31(4)(e). The referee also found that this factor was not applicable based on a lack of compelling evidence.

Accordingly, we conclude that the denial of mother's motion to change the child's domicile did not constitute an abuse of discretion, and we affirm that ruling. *Rains*, 301 Mich App at 324-325.

IV. FATHER'S MOTION TO MODIFY CUSTODY AND PARENTING TIME

Mother also argues that father's motion to modify custody, parenting time, and child support should not have been granted.

"To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. "Under the great weight of the evidence standard, this Court should not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). In the child custody context, "[a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias[,]" and "[c]lear legal error occurs when the trial court errs in its choice, interpretation, or application of the existing law." *Id*. (quotation marks and citations omitted; first alteration in original).

The "trial court may 'modify or amend' a previous child custody judgment or order 'for proper cause shown or because of change of circumstances' if doing so is in the best interests of the child." *Bowling v McCarrick*, 318 Mich App 568, 569; 899 NW2d 808 (2016), quoting MCL 722.27(1)(c).

To "establish 'proper cause' necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground . . . relevant to at least one of the twelve statutory best interest factors[] and . . . of such magnitude to have a significant effect on the child's well-being." *Vodvarka v Grasmeyer*, 259 Mich App 499, 512; 675 NW2d 847 (2003). "[I]n order to establish a 'change of circumstances,' a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed. *Id*. at 513. "The movant, of course, has the burden of proving by a preponderance of the evidence that either proper

cause or a change of circumstances exists *before* the trial court can consider whether an established custodial environment exists (thus establishing the burden of proof) and conduct a review of the best interest factors." *Id*. at 509.

"The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). Thus, "[i]f the trial court finds that an established custodial environment exists, then the trial court can change custody only if the party bearing the burden presents clear and convincing evidence that the change serves the best interests of the child. This higher standard also applies when there is an established custodial environment with both parents." *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001) (citations omitted). "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(a). Courts should also consider the "age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship." MCL 722.27(1)(a). "To determine the best interests of the children in child custody cases, a trial court must consider all the factors delineated in MCL 722.23(a)-(*l*)." *Foskett*, 247 Mich app at 9.

Here, mother asserts on appeal that the "Referee concluded that the change in domicile for the Plaintiff-Appellant and the child was enough to establish a material change in circumstance to trigger a best interests custody review." However, mother does not cogently develop this argument or meaningfully attempt to address the *Vodvarka* standard for determining whether proper cause or change of circumstances were established. Mother instead focuses on arguing that the referee's findings regarding the established custodial environment and the best-interest factors were erroneous. We conclude that mother has abandoned any challenge based on the referee's proper cause or change of circumstances finding. "[A]ppellants may not merely announce their position and leave it to this Court to discover and rationalize the basis for their claims; nor may they give issues cursory treatment with little or no citation of supporting authority." *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009) (quotation marks and citation omitted).

Next, we turn to mother's argument regarding the established custodial environment. The referee found that there was an established custodial environment with both parents and that father's request for sole legal custody and primary physical custody, with mother having weekend parenting time during the school year and extended parenting time during school breaks, would alter the established custodial environment.

Mother appears to argue on appeal that NS only had an established custodial environment with mother because mother had primary physical custody under the court's previous custody order. However, mother's focus on the mere fact that NS resided with her most of the time fails to address the relevant standard under the statute, which considers whether "over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort[,]" considering the "age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship." MCL 722.27(1)(c). The nature of mother's argument further ignores that under the statutory standard, a child may have an established custodial relationship with both the parent having primary physical custody and the other parent. *Foskett*, 247 Mich App at 2, 7-8; *Jack v*

*Jack*, 239 Mich App 668, 671; 610 NW2d 231 (2000). Mother's argument thus does not demonstrate error requiring reversal. MCL 722.28.

Next, mother challenges the best-interest findings with respect to several specific factors. The best-interest factors are contained in MCL 722.23, which provides as follows:

> As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:
>
> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.
>
> (d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
>
> (e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (f) The moral fitness of the parties involved.
>
> (g) The mental and physical health of the parties involved.
>
> (h) The home, school, and community record of the child.
>
> (i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.
>
> (j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.
>
> (k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.
>
> (*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Mother first argues that it was against the great weight of the evidence for the referee to find that factor (b) favored father. The referee explained its finding that this factor favored defendant as follows:

> Under this factor, Plaintiff would have been slightly favored due to the greater role that she has historically played with respect to managing [NS's] daily school-related needs. However, the referee finds that Plaintiff significantly mismanaged the GTA enrollment issue. Defendant would have been willing to take temporary custody of [NS] pending hearing in this matter. This would have allowed [NS] to finish his year at GTA and to be guaranteed a space for the fall semester, in the event the court did not grant Plaintiffs motion. Plaintiff never considered doing so and has now created a situation where it is likely that [NS] will have to attend a different school, regardless of which party prevails in this matter. Because of Plaintiffs mismanagement of this issue, she has created a significant impediment, as it relates to the "continuation" of [NS's] education.

On appeal, mother does not explain how any of the referee's factual findings are not supported by the evidence but instead argues that the referee should have weighed the evidence differently so as to come to a different conclusion. She contends that "it would have been impossible for the Plaintiff-Appellant to move without unenrolling the child from GTA in Traverse City and re-enrolling in the Dearborn Public Schools." However, mother's argument fails to acknowledge the referee's concern that the sum total of mother's actions demonstrated a lack of understanding about the disruptive long-term effects on NS's educational environment. The appellate standard of review does not allow us to substitute our judgement for that of the fact finder and determine whether we would have reached a different conclusion from the evidence; rather, the appellant must show that the facts clearly preponderate in the opposite direction, and mother has failed to do so here. *Shade*, 291 Mich App at 21.

Next, mother challenges the referee's findings that factors (d), (e), and (h) favored father. Noting mother's history of moving between Traverse City, Gaylord, and Dearborn over the past few years while NS was in lower elementary school, which resulted in NS starting school in GTA, then attending a different school in Gaylord for a year, and then transferring back to GTA for a year before mother unilaterally disenrolled NS from GTA and moved to Dearborn in 2022, the referee found that factors (d), (e), and (h) favored father because of the lack of stability and permanence NS had experienced in mother's care during the past few years. On appeal, mother completely ignores that this was the basis for the referee's decision. "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *TT*, 334 Mich App at 433 (quotation marks and citation omitted). Moreover, we again decline mother's invitation to improperly substitute our judgment for that of the fact finder. *Shade*, 291 Mich App at 21.

Next, mother argues that the referee erred with respect to factor (i) "by not stating anywhere in the record the reasonable preference of the child, thereby making an appellate review of this factor impossible." "One of the . . . factors a trial judge must consider in a custody dispute is the reasonable preference of the child, if the court deems the child to be of sufficient age to express preference." *Kubicki v Sharpe*, 306 Mich App 525, 545; 858 NW2d 57 (2014) (quotation marks and citation omitted). Here, the referee stated that NS had been interviewed *in camera*, that NS

"was able to state a reasonable preference," and that NS's preference had "been taken into consideration in the recommendation." On appeal, mother has not provided any legal authority to support a conclusion that the referee erred, and mother has thereby abandoned this argument. *McIntosh*, 282 Mich App at 485.

Finally, mother argues that the referee erred by finding that factor (*l*) favored defendant. Under factor (*l*), which is "[a]ny other factor considered by the court to be relevant to a particular child custody dispute," the referee concluded:

> It was clear that the parties are not able to cooperate and generally agree concerning important decisions affecting [NS's] welfare, as evidenced by Plaintiffs multiple school enrollment changes undertaken without seeking Defendant's input or consent ahead of time. Plaintiffs most recent unilateral school enrollment decision has placed [NS] in danger of being unable to re-enroll at GTA for the fall semester. This risk could have been alleviated by Plaintiff working with Defendant to allow [NS] to reside with Defendant temporarily, pending the hearing on her motion. This would have permitted [NS] to continue to attend GTA, and for a school enrollment decision to be put off until the court rendered a decision. Defendant would have willingly agreed to such an arrangement. Unfortunately, Plaintiff did not explore this option.

> This factor favors Defendant.

On appeal, mother does not contest the finding that she and father did not agree on the child's schooling. Mother merely argues that she "submits that the fact the parties cannot agree on a particular issue should not result in the best interests of the child factor favoring the Defendant-Appellee" and "the fact the parties disagree on *one* issue should not lead to the destruction of joint legal custody." However, mother's argument mischaracterizes the referee's decision, which granted father's motion to change custody based on weighing all of the best-interest factors; the referee did not "destroy" joint custody based on one disagreement between the parents. Mother does not cite any authority supporting an argument that the referee's approach to this factor was somehow legally erroneous. She merely argues that the referee just as easily could have decided this factor favored mother. Such an argument again invites this Court to improperly step into the role of fact-finder and substitute our judgment for that of the referee and trial court. Se again decline to do so. Mother has not demonstrated error requiring reversal. MCL 722.28; *Shade*, 291 Mich App at 21.

Affirmed. No costs are awarded. MCR 7.219.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien

-12-